**Clifford BROWN, Appellant–Defendant,**

**v.**

**Rhonda BRANCH, Appellee–Plaintiff.**

No. 07S04–0011–CV–716.

Supreme Court of Indiana.

Nov. 16, 2001.

James T. Roberts, Nashville, IN, Attorney for Appellant.

Thomas M. Barr, Nashville, IN, Attorney for Appellee.

## ON PETITION TO TRANSFER

RUCKER, Justice.

### Case Summary

Clifford Brown reneged on a promise to give a house to his girlfriend Rhonda Branch. She sued, and the parties debated whether Brown's oral promise was subject to the Statute of Frauds. After a bench trial, the trial court awarded the house to Branch under the theory of promissory estoppel. The Court of Appeals affirmed on that theory and also determined that Brown's promise was not within the Statute of Frauds. We grant transfer and hold that an oral promise to give another person real property falls within the Statute of Frauds. We also hold that although the doctrine of promissory estoppel may remove an oral promise from the statute's operation, in this case Branch failed in her burden of proving that the doctrine applies.

### Facts

Rhonda Branch and Clifford Brown were engaged in a ten-year on-again, off-again relationship. Sometime during that ten-year period, Brown purchased a home on State Road 135 in southern Indiana that the parties referred to as the "135 house." The couple lived in the home for one year early in their relationship. In 1995, Branch moved to Missouri, found a job, and enrolled in a business school program. Shortly thereafter, Brown telephoned her and said that if she moved back to Indiana, Branch would "always have the 135 house" and that she "won't be stuck on the street. You will have a roof over your head." R. at 476. Brown also proposed marriage, and Branch accepted.

Branch quit her job, dropped out of school after finishing the semester, and moved back to Indiana. Branch and Brown then lived together for two brief periods before the relationship eventually ended.

Thereafter, Branch sued Brown when he failed to convey the 135 house. Following a bench trial, the trial court awarded the house to Branch. On review, the Court of Appeals affirmed the trial court's judgment ruling: (i) Brown's oral promise to give Branch the 135 house was not a sale within the meaning of the Statute of Frauds and therefore did not need to be in writing in order to be enforced; and (ii) the oral promise was enforceable under the doctrine of promissory estoppel. *Brown v. Branch*, 733 N.E.2d 17, 25 (Ind. Ct.App.2000). We accept transfer and reverse the trial court.

### Discussion

#### I.

█ The Statute of Frauds provides in pertinent part that "[n]o action shall be brought ... [u]pon any contract for the sale of lands ... [u]nless the promise, contract or agreement upon which such action shall be brought ... shall be in writing...." Ind.Code § 32-2-1-1. Although not conceding that he made a promise at all, Brown seems to say that even if he did, the promise of the 135 house was an oral contract for the sale of lands, and thus to be enforceable it had to be in writing. Branch counters that Brown made a promise, and that the promise was to "*give* the land and not to *sell* the land." Appellee's Br. in Opp'n to Pet. for Transfer at 3. According to Branch, "The Statute of Frauds applies only to promises to *sell* land," and thus Brown's agreement does not have to be in writing to be enforceable. *Id.* Relying on *Black's Law Dictionary* 1337 (6th ed.

1990), both parties point to varying definitions of "sale" to support their positions.

■ The Statute of Frauds does not define the term "sale." However, the law is settled that "a right to the possession of real estate is an interest therein, and any contract which *seeks to convey an interest in land* is required to be in writing." *Guckenberger v. Shank*, 110 Ind.App. 442, 37 N.E.2d 708, 713 (1941) (emphasis added). Although not often articulating it as such, our courts have long applied the principle that an agreement to convey land is subject to the Statute of Frauds' writing requirement. And this is so whether there is actually a "sale" as the term is commonly used. *See, e.g., Hensley v. Hilton*, 191 Ind. 309, 131 N.E. 38, 40 (1921) (contract to "devise" real estate required to be in writing); *Fuelling v. Fuesse*, 43 Ind.App. 441, 87 N.E. 700, 701 (1909) (mutual agreement concerning a boundary line between parties required to be in writing); *McCoy v. McCoy*, 32 Ind.App. 38, 69 N.E. 193, 195 (1903) (contract for the "exchange" of real estate required to be in writing). Indeed, over three quarters of a century ago, our courts implicitly acknowledged that a gift of land was subject to the operation of the Statute of Frauds. *Osterhaus v. Creviston*, 62 Ind.App. 382, 111 N.E. 634, 636–37 (1916) (concerning the allegation that one party "gave" thirty acres of land to another, the court observed that "a parol gift, or a verbal contract for the sale of land, may be taken out of the operation of the statute of frauds . . . .").

■ Requiring a writing for transactions concerning the conveyance of real estate, regardless of whether a sale has occurred within the dictionary definition of the term, is consistent with the underlying purposes of the Statute of Frauds, namely: to preclude fraudulent claims that would likely arise when the word of one person is pitted against the word of another, *Summerlot v. Summerlot*, 408 N.E.2d 820, 828 (Ind.Ct.App.1980), and to remove the temptation of perjury by preventing the rights of litigants from resting wholly on the precarious foundation of memory, *Ohio Valley Plastics, Inc. v. National City Bank*, 687 N.E.2d 260, 263 (Ind.Ct.App. 1997), *trans. denied*. These purposes are underscored in this case. The record shows the parties vigorously disputed the content and meaning of the conversation preceding Branch's move back to Indiana.[1] In any event, the Statute of Frauds is unambiguous and provides a bright line rule that is applicable here. Despite Brown's protest to the contrary, there was sufficient evidence before the trial court to show that he made a promise to Branch to convey real estate. However, that promise falls within the Statute of Frauds, and because it was not in writing it generally would be unenforceable. Nonetheless, even when oral promises fall within the Statute of Frauds, they may be enforced under the doctrine of promissory estoppel. *Tincher v. Greencastle Fed. Sav. Bank*, 580 N.E.2d 268, 272 (Ind.Ct.App.1991); *Tipton County Farm Bureau Coop. Ass'n, Inc. v. Hoover*, 475 N.E.2d 38, 41 (Ind.Ct. App.1985), *trans. denied*. We next examine whether the doctrine is applicable here.

**II.**

■ Estoppel is a judicial doctrine sounding in equity. Although variously

---

1. For example, there was testimony that Brown never intended to give Branch the 135 house but rather to allow her to live there indefinitely. R. at 574. According to Brown, that was the reason he did not promise to "deed" the house to Branch. R. at 706. On another point, Branch testified that the promise of the 135 house was a major factor in her decision to move back to Indiana and give the relationship another try. R. at 554. Brown testified there was evidence to show that Branch had made up her mind to come back to Indiana before the purported promise was ever made. R. at 693–94.

defined, it is a concept by which one's own acts or conduct prevents the claiming of a right to the detriment of another party who was entitled to and did rely on the conduct. *In re Edwards,* 694 N.E.2d 701, 715 (Ind.1998). There are a variety of estoppel doctrines including: estoppel by record, estoppel by deed, collateral estoppel, equitable estoppel-also referred to as estoppel *in pais,* promissory estoppel, and judicial estoppel. 28 Am.Jur.2d Estoppel and Waiver § 2 (2000). All, however, are based on the same underlying principle: one who by deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other. 31 C.J.S. Estoppel and Waiver § 2 (1996).

▮ In this case, Branch pursued her claim against Brown asserting a number of theories including the doctrine of promissory estoppel. It was upon this theory the trial court granted Branch relief and upon which the Court of Appeals also affirmed.[2] This species of estoppel encompasses the following elements: (1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise. *First Nat'l Bank of Logansport v. Logan Mfg. Co., Inc.,* 577 N.E.2d 949, 954 (Ind.1991). However, regardless of the type of estoppel asserted, as our Court of Appeals has observed:

[I]n order to establish an estoppel to remove the case from the operation of the Statute of Frauds, the party must

show [ ] that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss.

In other words, neither the benefit of the bargain itself, nor mere inconvenience, incidental expenses, etc. short of a reliance injury so substantial and independent as to constitute an unjust and unconscionable injury and loss are sufficient to remove the claim from the operation of the Statute of Frauds.

*Whiteco Indus., Inc. v. Kopani,* 514 N.E.2d 840, 845 (Ind.Ct.App.1987) (citations omitted), *trans. denied; accord Ohio Valley Plastics, Inc.,* 687 N.E.2d at 264 (holding that Bank's damages were benefit of the bargain type damages that "fail to constitute a substantial and independent injury sufficient to remove Borrower's claim from the operation of the Statute of Frauds."); *Wabash Grain, Inc. v. Bank One,* 713 N.E.2d 323, 326–27 (Ind.Ct.App. 1999) (concluding that in a summary judgment action, Wabash Grain "designate[d] no evidence demonstrating how its reliance upon the oral agreement to extend the loan caused it an 'injury so substantial and independent as to constitute an unjust and unconscionable injury.' "). Thus, while it is true that the doctrine of promissory estoppel may remove an oral agreement from the operation of the Statute of Frauds, it is also true that the party asserting the doctrine carries a heavy burden establishing its applicability.

▮ In the case before us, assuming without deciding there was sufficient evi-

---

**2.** In addition to various forms of estoppel, there are a number of equitable doctrines that also may provide a basis for avoidance of the Statute of Frauds, including quantum meruit, *see Galanis v. Lyons & Truitt,* 715 N.E.2d 858, 861 (Ind.1999); part performance, *see Marathon Oil Co. v. Collins,* 744 N.E.2d 474, 478 (Ind.Ct.App.2001); and constructive fraud, *see id.* at 480. None of these alternative grounds are at issue in this appeal.

dence before the trial court to support the elements of promissory estoppel, the question remains whether there was sufficient evidence before the trial court to show that Branch suffered an "unjust and unconscionable injury and loss" as a result of her reliance on Brown's oral promise. *See Whiteco,* 514 N.E.2d at 845. In reaching that determination, we are guided by cases that examine the degree of consideration given in reliance on an oral promise. If what the party gave up in reliance on an oral promise was no greater than what the party would have given up in any event, then the consideration is deemed insufficient to remove the oral promise from the operation of the Statute of Frauds. For example, in *Whiteco,* relying on an employer's oral promise of employment, a theatre producer and other employees: (i) gave up their existing employment to accept the jobs; (ii) moved to Indiana from other states; and (iii) two of the employees purchased homes in Indiana. Rejecting the employees' claim that the employer's oral representation should be removed from the operation of the Statute of Frauds on grounds of promissory estoppel or constructive fraud, our Court of Appeals determined that the foregoing factors "do not possess the quality of those which courts have found sufficient to constitute an independent consideration." *Id.* at 843. According to the court "neither the actions involved in moving one's household to a new location nor the mere relinquishment of an existing employment are sufficient to constitute independent consideration." *Id.* at 843–44. Endorsing this approach, we have observed:

> The reason for this view is that in moving and/or giving up her prior job, the employee is merely placing herself in a position to accept the new employment. There is no independent detriment to the employee because she would have had to do the same things in order to accept the job on any basis, and there is no independent benefit bestowed upon the employer.

*Wior v. Anchor Indus., Inc.,* 669 N.E.2d 172, 176 (Ind.1996) (quoting *Ohio Table Pad Co. of Ind., Inc. v. Hogan,* 424 N.E.2d 144, 146 (Ind.Ct.App.1981)); *see also Bee Window, Inc. v. Turman,* 716 N.E.2d 498, 501 (Ind.Ct.App.1999) (discussing independent consideration in the context of the employment at will doctrine, the Court of Appeals held that "simply surrendering another job or moving to another location, standing alone, does not constitute adequate independent consideration.").

In the case before us, the record shows that in order to accept Brown's oral promise of the 135 house, Branch quit her modest job, dropped out of college at the end of the semester, and moved back to Indiana from Missouri where she had been living with her parents. R. at 398, 463, 593. For sure Branch was inconvenienced as well as denied the benefit that Brown's promise was intended to confer. However, Branch has not shown that her reliance on Brown's oral promise resulted in the "infliction of an unjust and unconscionable injury and loss" that would remove the promise from the operation of the Statute of Frauds. We are therefore constrained to reverse the judgment of the trial court.

### *Conclusion*

The judgment of the trial court is reversed.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.