**SPRING HILL DEVELOPERS, INC., and John G. Brinkworth, Appellants–Plaintiffs,**

v.

**Delbert N. ARTHUR, Jr., and Judith A. Arthur, Appellees–Defendants.**

No. 22A01–0703–CV–113.

Court of Appeals of Indiana.

Jan. 22, 2008.

Keith D. Mull, Mull & Heinz, LLC, New Albany, IN, Attorney for Appellants.

Derrick H. Wilson, Mattox, Mattox & Wilson, New Albany, IN, Attorney for Appellees.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Spring Hill Developers, Inc., and John Brinkworth appeal the trial court's grant of summary judgment in favor of Delbert "Sonny" Arthur and Judith Arthur. On appeal, Spring Hill and Brinkworth raise one issue, which we restate as whether the trial court properly granted summary judgment in favor of the Arthurs. Concluding that the trial court properly applied the statute of frauds to bar Spring Hill's and Brinkworth's complaint, we affirm.

### Facts and Procedural History

In June 1994, the Arthurs purchased a 46.317–acre tract of land located in Floyd County (the "Property") and recorded title in their names. Shortly thereafter, Sonny hired Brinkworth's company, John G. Brinkworth, Inc., to survey the Property. Around the same time, Sonny asked Brinkworth if Brinkworth wanted to develop the Property with him. The development project included dividing the property into ninety-five individual lots, installing sewer and other utility services, and building access roads. Sonny and Brinkworth planned to sell the lots to builders, who in turn would construct single-family homes on them. Brinkworth's role in the development project involved surveying and en-

gineering the Property, attending plan commission meetings, and "just kind of run[ning] the show for [Sonny] in terms of getting things approved...." Appellant's Appendix at 112. Brinkworth also planned on buying several lots in his own capacity and building homes on them.

In March 1998, Sonny and Brinkworth formed Spring Hill Developers, Inc., to implement the development project. Sonny served as president and Brinkworth served as secretary-treasurer, and each owned half of Spring Hill's shares. In January 1999, Spring Hill entered into an agreement with The Reynolds Group, Inc., to provide sewage treatment services for the Property. In April 1999, the Floyd County Plan Commission approved Spring Hill's plat for the development project's first phase, which involved fifty-four of the ninety-five lots. Although the project was scheduled to proceed on the first phase shortly after the plan commission approved the plat, at some time between June and August 1999, The Reynolds Group was bought out by Aqua Source. As a result of the buyout, Aqua Source assumed The Reynolds Group's rights and obligations under the agreement with Spring Hill. According to Brinkworth, however, "when Aqua Source took over, Aqua Source did not like the deal, so they just drug [sic] their feet.... And we pretty much just told them, 'Hey, you know, we've got an agreement here. We plan to stick to our agreement.' " *Id.* at 114.

The disagreement between Spring Hill and Aqua Source was referred to arbitration, during which work on the development project ceased. In September 2004, the arbitrator awarded between $560,000 and $570,000 to Spring Hill, and Sonny and Brinkworth split the award after depositing $20,000 in Spring Hill's bank account. Despite resolution of the arbitration dispute, work on the development project remained stagnant because Sonny

and Brinkworth were unable to find a company that could provide sewage treatment services at a reasonable price. Further complicating the sewage treatment problem was that Aqua Source leased a treatment plant on land owned by Sonny that was adjacent to the Property. Sonny and Brinkworth planned on directing sewage from the Property to this treatment plant, but around the same time as the arbitration dispute, Sonny and Aqua Source became involved in litigation over the lease of the plant.

By August 2005, based in large part on the problems related to providing sewage treatment services for the Property, Sonny doubted whether he wanted to proceed with the development project and mentioned to Brinkworth "that he just thought he would sell it and get out." *Id.* at 122. When Brinkworth claimed that he was entitled to compensation for his services plus half of the proceeds from the sale of the Property, Sonny responded that title to the Property was in his name and that he did not owe Brinkworth anything beyond compensation for his services.

In November 2005, Spring Hill and Brinkworth filed a complaint against the Arthurs seeking an order of specific performance for the Arthurs to convey the Property to Spring Hill. The complaint alleged that Sonny and Brinkworth agreed the Arthurs would convey the Property to Spring Hill prior to final platting, and the Arthurs would retain a lien on the Property during the development project. As the lots were sold, Spring Hill would pay the Arthurs $4,500 for each lot, and the Arthurs would release their lien in proportion to each payment. In September 2006, the Arthurs filed a motion for summary judgment, arguing that the alleged agreement between Sonny and Brinkworth was unenforceable based on the statute of frauds. Following a hearing on the motion in De-

cember 2006, the trial court entered an order granting the Arthurs' motion. Spring Hill and Brinkworth now appeal.

### Discussion and Decision

#### I. Standard of Review

This court applies the same standard of review as the trial court in determining the propriety of summary judgment; it is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981, 983–84 (Ind.1998). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997).

#### II. Propriety of Trial Court's Decision

Spring Hill and Brinkworth argue the trial court erred in granting the Arthurs' motion for summary judgment because there are genuine issues of material fact regarding whether the statute of frauds applies. The statute of frauds states in relevant part:

> A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:
>
> . . .
>
> (4) An action involving any contract for the sale of land.

Ind.Code § 32–21–1–1(b). Spring Hill and Brinkworth do not argue that a writing exists. Instead, they argue two exceptions to the writing requirement apply; namely, the equitable doctrines of promissory estoppel and part performance.

■ Before addressing whether these doctrines apply, we turn to two novel arguments Spring Hill and Brinkworth make regarding equitable exceptions to the statute of frauds. The first argument is that this court should extend the "direct benefit" exception to the statute of frauds to cases where the oral promise is to sell land. Appellant's Brief at 16. In support of this argument, Spring Hill and Brinkworth cite a Seventh Circuit opinion for the proposition that "the statute of frauds does not apply when the promisor received some consideration from his promise that provided him with a 'personal, immediate and pecuniary interest in the transaction.'" *Luson Int'l Distrib., Inc. v. Mitchell*, 939 F.2d 493, 496 (7th Cir.1991) (applying Indiana law) (quoting *New Amsterdam Cas. Co. v. Madison County Trust Co.*, 81 Ind.App. 157, 142 N.E. 727, 729 (1924)), *abrogated on other grounds, Mayer v. Gary Partners and Co., Ltd.*, 29 F.3d 330, 335 (7th Cir.1994). This argument, however, overlooks that the direct benefit exception is limited to cases where the oral promise is to guarantee the debt of another, *see New Amsterdam*, 81 Ind.App. at 157, 142 N.E. at 728; *Voris v. Star City Bldg. & Loan Ass'n*, 20 Ind.App. 630, 50 N.E. 779, 782 (1898), not where it is to sell land.[1] In light of this distinction, Spring Hill and Brinkworth have not explained why the direct benefit exception should be

---

1. The so-called direct benefit exception is less an exception to the statute of frauds than it is a recognition that although the statute of frauds requires a writing for a promise to guarantee the debt of another, *see* Ind.Code § 32–21–1–1(b)(2), such a promise is not within the statute where the promisor receives a direct benefit as a result of the promise, *see* 4 Corbin on Contracts § 16.1 at 314 (Rev. ed. 1997) ("[W]hen the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute.").

**1100**

extended to their case. Absent such an explanation, we decline to recognize a direct benefit exception in cases where the oral promise is to sell land.

Spring Hill's and Brinkworth's second argument is that this court should use a "relaxed" standard in determining whether the promissory estoppel and part performance exceptions apply. Appellant's Br. at 17. Spring Hill and Brinkworth do not explain the degree to which the standard should be relaxed, but argue such a standard is appropriate in this case because Sonny admitted in a deposition that there was an agreement between him and Brinkworth regarding conveyance of the Property to Spring Hill. To support their argument, Spring Hill and Brinkworth quote from *Consolidation Servs., Inc. v. KeyBank Nat. Ass'n,* 185 F.3d 817, 820 (7th Cir.1999) (applying Indiana law), emphasizing the court's observation that "[w]hen ... there is particularly compelling evidence of the contract's existence, the strictures of the statute of frauds can safely be relaxed, for example in the case of an admission." A closer reading of the opinion, however, indicates that the court's reference to relaxing the statute of frauds is simply another way of saying that an equitable exception applies, *see Consolidation Servs.,* 185 F.3d at 822 (explaining that "[i]n some cases reliance on an oral promise may take a form that ... provides compelling evidence of the existence and terms of a contract, and then, once more, the statute of frauds is relaxed"); it does not announce a rule whereby the party seeking to establish the exception is held to a less rigorous standard of proof. Thus, we decline to use a relaxed standard in determining whether the equitable exceptions of promissory estoppel and part performance apply. We now turn to these issues.

### A. Promissory Estoppel

Spring Hill and Brinkworth argue the trial court improperly concluded that promissory estoppel did not apply. The estoppel doctrine is based on the rationale that a person whose conduct has induced another to act in a certain manner should not be permitted to adopt a position inconsistent with such conduct so as to cause injury to the other. 31 C.J.S. Estoppel and Waiver § 2 (1996). Coupled with the statute of frauds, the two represent alternative and sometimes competing means to achieve the same ends of avoiding injustice:

> The statute of frauds was designed as the weapon of the written law to prevent fraud, while the doctrine of estoppel is that of the unwritten law to prevent like evil. Each is effective in its appropriate field; both are essential to prevent and redress wrongs, and neither should be allowed to dominate the other.

*Columbus Trade Exch., Inc. v. AMCA Intern. Corp.,* 763 F.Supp. 946, 952 (S.D.Ohio 1991). Consistent with these observations, a party seeking to preclude application of the statute of frauds based on promissory estoppel must establish the following elements: 1) a promise by the promissor; 2) made with the expectation that the promisee will rely thereon; 3) which induces reasonable reliance by the promisee; 4) of a definite and substantial nature; and 5) injustice can be avoided only by enforcement of the promise. *First Nat. Bank of Logansport v. Logan Mfg. Co.,* 577 N.E.2d 949, 954 (Ind.1991).

We note initially that there are genuine issues of material fact regarding whether Spring Hill and Brinkworth can establish the first four elements of promissory estoppel. Regarding the first element, during Sonny's deposition in relation to the arbitration with Aqua Source, the following exchange took place:

Q. What was your understanding of the agreement between [you] and [Spring Hill] regarding sale of the [Property] to [Spring Hill], I mean how was it going to work?

A. Well, just like [Brinkworth] described it [in his deposition testimony]. I bought the [Property], and it's paid for, and pretty much the way he told you.

Appellant's App. at 58. Although Brinkworth's deposition testimony from the arbitration dispute is not included in the designated evidence, he states in an affidavit prepared in relation to this case that "Sonny and Judith would convey the Property to Spring Hill while retaining a vendor's lien on the Property and Spring Hill would pay a purchase price to Sonny and Judith of $4,500 per lot upon the sale of each developed lot on the Property." *Id.* at 94. The affidavit also states that the conveyance to Spring Hill would occur "prior to the final platting of the Property as a subdivision." *Id.* Moreover, a document filed on behalf of Spring Hill and Sonny in relation to the arbitration with Aqua Source[2] states, "Mrs. Arthur is expected to testify that she was aware of the arrangement between Mr. Arthur and Spring Hill to transfer the property to Spring Hill for development purposes once sewer service was available and all other necessary approvals had been obtained." *Id.* at 86. Construing this evidence and the reasonable inferences drawn from it in favor of Spring Hill and Brinkworth, it follows there is a factual issue regarding whether Sonny promised to convey the Property to Spring Hill.

Regarding the second and third elements, Sonny and Brinkworth signed in their capacities as Spring Hill officers the plat Spring Hill submitted to the plan commission for the first phase of the development project. This plat states, "We, the undersigned, SPRING HILL DEVELOPERS, INC., owners of the property herein described, do hereby acknowledge the foregoing to be the plat of SPRING HILLS, SECTION ONE...." *Id.* at 72. That Sonny signed a notarized document that was submitted to the plan commission acknowledging Spring Hill as the owner of the Property creates factual issues regarding whether Sonny's promise to convey the Property to Spring Hill was made with an expectation that Brinkworth would rely on it and, if so, whether Brinkworth's reliance was reasonable.

Regarding the fourth element, the designated evidence described above, specifically the evidence indicating that Sonny and Brinkworth formed Spring Hill for the purpose of developing the Property and that Brinkworth performed services in furtherance of the development project, creates a factual issue regarding whether Sonny's promise was of a definite and substantial nature.

Although there are factual issues regarding the first four elements of promissory estoppel, the question remains whether injustice can be avoided only by enforcement of the promise. This element creates a high bar for the party seeking to establish promissory estoppel. In adopting reasoning from this court, our supreme court has explained the type of injury required to establish this element:

[I]n order to establish an estoppel to remove the case from the operation of the Statute of Frauds, the party must show [ ] that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss.

2. Spring Hill and Sonny were the named plaintiffs in the arbitration proceeding.

In other words, neither the benefit of the bargain itself, nor mere inconvenience, incidental expenses, etc. short of a reliance injury so substantial and independent as to constitute an unjust and unconscionable injury and loss are sufficient to remove the claim from the operation of the Statute of Frauds.

*Brown v. Branch,* 758 N.E.2d 48, 52 (Ind. 2001) (quoting *Whiteco Indus. v. Kopani,* 514 N.E.2d 840, 845 (Ind.Ct.App.1987) (citation omitted), *trans. denied*).[3]

Indiana appellate courts addressing promissory estoppel have applied this reasoning sporadically. In *Brown,* for example, our supreme court reversed the trial court's judgment enforcing the defendant's oral promise to convey a house based on a theory of promissory estoppel. Critical to the court's conclusion was its observation that *Whiteco* stood for the proposition that "[i]f what the party gave up in reliance on an oral promise was no greater than what the party would have given up in any event, then the consideration is deemed insufficient to remove the oral promise from the operation of the Statute of Frauds." *Brown,* 758 N.E.2d at 53. Thus, although the plaintiff quit her job, dropped out of college, and moved from Missouri to Indiana in reliance on the defendant's promise to convey a house to her, the court reasoned such injuries merely established that the plaintiff "was inconvenienced as well as denied the benefit that [the defendant's] promise was intend-ed to confer," but not that the defendant's "oral promise resulted in the 'infliction of an unjust and unconscionable injury and loss.'" *Id.*

In contrast to *Brown,* in *Hardin v. Hardin,* 795 N.E.2d 482, 488 (Ind.Ct.App. 2003), a panel of this court affirmed the trial court's judgment enforcing the defendant's oral promise to sell land based on a theory of promissory estoppel. The defendant in *Hardin* promised his son, the plaintiff's husband, and the plaintiff that he would sell the couple an eleven-acre tract of land on which the couple planned to build a house. After the plaintiff and her husband spent more than $60,000 on clearing the land, installing utility services, and pouring a foundation for the house, the husband filed a petition for dissolution of marriage. In response, the plaintiff offered to pay the defendant the purchase price for the land. When the defendant refused, the plaintiff filed a complaint seeking an order of specific performance for conveyance of the land. In affirming the trial court's judgment in favor of the plaintiff, the court cited our supreme court's opinion in *Brown,* concluding "[t]here is sufficient evidence to support the trial court's conclusion here [that] 'injustice can be avoided only by enforcement of the promise.'" *Hardin,* 795 N.E.2d at 488 (citing *Brown* 758 N.E.2d at 52). Significantly, however, the court did not mention the language stated in *Whiteco,* 514

**3.** A literal reading of the *Brown* opinion suggests this language constitutes an additional element of promissory estoppel. Specifically, the court states, "In the case before us, assuming without deciding there was sufficient evidence before the trial court to support the elements of promissory estoppel, the question remains whether there was sufficient evidence before the trial court to show that [the plaintiff] suffered an 'unjust and unconscionable injury and loss' as a result of her reliance on [the defendant's] oral promise." *Id.* at 52–53. Assuming there was sufficient evidence supporting the elements of promissory estoppel, while at the same time addressing whether the injury was unconscionable suggests the "unconscionable injury and loss" language is an additional element. Nevertheless, because our supreme court recently clarified that the "unconscionable injury and loss" language describes the type of evidence needed to establish the fifth element of promissory estoppel, *see Coca–Cola Co. v. Babyback's Intern., Inc.,* 841 N.E.2d 557, 569 (Ind.2006), we will treat this language as applicable to that element.

N.E.2d at 845, and reiterated in *Brown,* 758 N.E.2d at 52, that the reliance injury must be "so substantial and independent as to constitute an unjust and unconscionable injury and loss . . . ."

This omission did not go unnoticed by our supreme court. In *Babyback's,* the court observed that the language in *Whiteco* and *Brown* "may be understood to express that . . . the reliance injury must be not only (1) independent from the benefit of the bargain and resulting incidental expenses and inconvenience, but also (2) so substantial as to constitute an unjust and unconscionable injury." 841 N.E.2d at 569. The court also observed that "some decisions of the Court of Appeals appear to have granted relief from the Statute of Frauds under the promissory estoppel doctrine without consideration of such a separate requirement that the reliance injury be independent" and that transfer was not sought in each of these decisions. *Id.* at 569–70 (citing *Hardin; Tincher v. Greencastle Fed. Sav. Bank,* 580 N.E.2d 268 (Ind.Ct.App.1991); and *Tipton County Farm Bureau Coop. Ass'n, Inc. v. Hoover,* 475 N.E.2d 38 (Ind.Ct.App.1985)). We interpret these observations to mean that enforcement of the oral promise is justified only where the reliance injury meets the two-step test identified above and that opinions failing to apply this standard are disapproved.

■ Thus, consistent with the test stated in *Babyback's,* to establish that injustice can be avoided only through enforcement of Sonny's promise, Spring Hill and Brinkworth must show their reliance injury is 1) independent from the benefit of the bargain and the resulting expenses and inconvenience; and 2) so substantial as to constitute an unjust and unconscionable injury. In this respect, Brinkworth's affidavit states that if Sonny's promise to convey the Property to Spring Hill is not enforced, Spring Hill and Brinkworth will suffer the following unjust and unconscionable injuries: 1) "time and expense toward the development of the Property having a value in excess of $80,000.00"; 2) "value for . . . services and incurred expenses in planning the development of the Property"; 3) "the benefit of the bargain struck with Sonny and Judith for the purchase of the property"; 4) "profits . . . anticipated from the development of the Property, which profits were a part of the consideration for [Brinkworth's] investment of time, expertise, and expenses in the development of the Property"; 5) "approximately twelve (12) years . . . invested in pursuing the development of the Property and the profits therefrom"; and 6) "the opportunity to further profits from [Brinkworth's] construction of homes in the development." Appellant's App. at 96.

■ Putting to the side whether these injuries are independent from the benefit of the bargain and the resulting expenses and inconvenience, we are not convinced they constitute a reliance injury so substantial as to constitute an unjust and unconscionable injury. The itemized injuries fall into two categories, reliance injuries incurred in developing the property into a suitable condition for subdivision and sale, and expectancy injuries based on profits from the sale of the lots. Regarding the latter, because the test in *Babyback's* addresses reliance injuries only, these expectancy injuries are excluded from the unconscionability analysis. *Cf. Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.,* 644 N.E.2d 118, 122 (Ind.1994) ("To the extent that the plaintiff's request for estoppel seeks to compel the defendants to resume their employment of the plaintiff, or seeks damages in the form of lost wages following his discharge, such requested relief represents expectancy damages, not reliance costs, and thus is not recoverable."). The former are not unconscionable

because they pertain to Brinkworth's services, and nothing prevents Brinkworth from receiving the reasonable value of his services based on quantum meruit, *see Galanis v. Lyons & Truitt*, 715 N.E.2d 858, 861 (Ind.1999); *see also* appellee's brief at 14 (conceding "Brinkworth might be entitled to quantum meruit damages"), or, more generally, from receiving restitution based on unjust enrichment, *see Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992).

Because none of Spring Hill's and Brinkworth's reliance injuries is so substantial as to constitute an unjust and unconscionable injury,[4] we conclude Spring Hill and Brinkworth cannot show that injustice can be avoided only by enforcement of Sonny's promise. Thus, it follows that promissory estoppel does not apply to remove Sonny's promise from the statute of frauds.

## B. Part Performance

 Spring Hill and Brinkworth argue the trial court improperly concluded that part performance did not apply to remove the agreement between Sonny and Brinkworth from the statute of frauds. The part performance doctrine is based on the rationale that equity will not permit a party who breaches an oral contract to invoke the statute of frauds where the other party "has performed his part of the agreement to such an extent that repudiation of the contract would lead to an unjust or fraudulent result...." *Summerlot v.*

*Summerlot*, 408 N.E.2d 820, 828 (Ind.Ct. App.1980). This court has stated consistently that where the oral promise is to sell an interest in land, "some combination" of the following acts of performance are sufficient for the doctrine to apply: 1) payment of the purchase price or a part thereof; 2) possession; and 3) lasting and valuable improvements on the land. *See Marathon Oil Co. v. Collins*, 744 N.E.2d 474, 478 (Ind.Ct.App.2001); *Perkins v. Owens*, 721 N.E.2d 289, 292 (Ind.Ct.App. 1999); *Dubois County Mach. Co. v. Blessinger*, 149 Ind.App. 594, 599, 274 N.E.2d 279, 282 (1971).

Spring Hill and Brinkworth cannot establish payment or possession for the simple reason that Sonny's conveyance of the Property to Spring Hill was not premised on the performance of such acts. The designated evidence indicates that Sonny's oral promise required installment payments by Spring Hill after the property had been conveyed and that prior to the conveyance, Brinkworth was not required to possess the property. Although Spring Hill and Brinkworth cannot establish payment or possession, such acts, along with improvements, are less elements required for the doctrine to apply than they are examples of the type of performance that has been used as a basis for applying the doctrine. *Cf.* Restatement (Second) of Contracts § 129 cmt. a (1981) ("Part performance is not an accurate designation of such acts as taking possession and making improvements when the contract does not

---

**4.** The designated evidence indicates that in addition to the injuries listed in Brinkworth's affidavit, Brinkworth also incurred approximately $110,000 in legal fees related to the arbitration with Aqua Source and half of an unspecified amount in legal fees related to litigation involving Aqua Source's lease of the sewage treatment plant on Sonny's land adjacent to the Property. Brinkworth testified he was not required to pay these latter fees, but felt obligated to do so. Brinkworth recouped the $110,000 from the arbitration award, but the designated evidence does not indicate whether he was reimbursed for the legal fees he paid in relation to the litigation over the lease. Regardless, because Spring Hill and Brinkworth have not designated evidence indicating the amount Brinkworth paid in legal fees related to the litigation over the lease, we are unable to address whether the payment of such fees constitutes an unconscionable injury and loss.

provide for such acts, but such acts regularly bring the doctrine into play."). Instead, an alternative way to determine whether the doctrine applies is to use the standard expressed in the Restatement:

A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement.

Restatement (Second) of Contracts § 129; *cf. Summerlot*, 408 N.E.2d at 828 ("Where one party to an oral contract in reliance on that contract has performed his part of the agreement to such an extent that repudiation of the contract would lead to an unjust or fraudulent result, equity will disregard the requirement of a writing and enforce the oral agreement."). Comment b to section 129 clarifies that the reliance of the promisee must provide "a compelling substantive basis for relief in addition to the expectations created by the promise" and that determining whether this substantive basis is established "requires consideration of the adequacy of the remedy of restitution."

Applying the standard expressed in section 129 of the Restatement, we are not convinced the part performance doctrine applies to remove Sonny's promise from the statute of frauds. Assuming Brinkworth sufficiently changed his position in reliance on Sonny's promise, the nature of the injury cannot be characterized as so substantial that injustice can be avoided only through specific performance. In this respect, it is important to reiterate that nothing prevents Brinkworth from receiving the reasonable value of his services or restitution, or both. *See supra*, Part II.A. (discussing possible remedies for Brinkworth's injuries). Because Spring Hill and Brinkworth cannot establish that injustice can be avoided only through specific performance, it follows that the part performance doctrine does not apply to remove Sonny's promise from the statute of frauds.

### Conclusion

The trial court properly concluded the statute of frauds applied to bar Spring Hill's and Brinkworth's complaint. Therefore, its grant of summary judgment in favor of the Arthurs was proper.

Affirmed.

KIRSCH, J., and BARNES, J., concur.