## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2017, 8:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

William L. Scales
Evansville, Indiana

ATTORNEY FOR APPELLEE

Thomas P. Norton
Johnson, Carroll, Norton, Kent & Goedde, P.C.
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William L. Scales,

*Appellant-Plaintiff,*

v.

Chester Levels,

*Appellee-Defendant.*

January 31, 2017

Court of Appeals Case No. 82A01-1512-CC-2323

Appeal from the Vanderburgh Circuit Court

The Honorable David D. Kiely, Judge

Trial Court Cause No. 82C01-1401-CC-21

**Brown, Judge.**

[1]     William L. Scales appeals the trial court's order granting summary judgment in favor of Chester Levels. Scales raises three issues which we consolidate and restate as whether the court erred in entering summary judgment in favor of Levels or abused its discretion in denying Scales's subsequent motion to correct error. We affirm.

## Facts and Procedural History

[2]     Scales executed a quitclaim deed on March 10, 2011, conveying his undivided one-tenth interest in certain real property in Vanderburgh County, Indiana, to Levels, and the deed was recorded with the Vanderburgh County Recorder on March 28, 2011.

[3]     On January 16, 2014, Scales filed a complaint seeking a judgment declaring his right to an undivided one-half interest in the property. Scales alleged in part that he executed the March 10, 2011 deed pursuant to a verbal agreement with Levels in which Levels agreed to later deed an undivided one-half interest of the property back to him, with Levels and Scales each holding an undivided one-half interest as tenants in common; that Scales had originally acquired title to the property through intestate succession as set forth in a certain Affidavit of Heirship of Chester L. Scales, Deceased, recorded with the Vanderburgh County Recorder on December 21, 2010 (the "Affidavit of Heirship"); and that he reasonably relied on Levels's promise and deeded his interest in the property to Levels as consideration for Levels's promise to make improvements thereon and then deed an interest back to him.

[4] On January 6, 2015, Levels filed a motion for summary judgment and designation of materials in support of the motion, which included the affidavit of his mother Alethea Christian and a copy of the Affidavit of Heirship. In her affidavit, Christian states that she is the daughter of Chester L. Scales and the mother of Levels; that Chester L. Scales died on July 31, 2000; that his heirs were set forth in the Affidavit of Heirship; that the heirs had neither the desire nor the resources to singly assume ownership of the property as it was subject to efforts by the Department of Code Enforcement of the City of Evansville demanding remedial actions; that Levels agreed he would attend to the remediation and clean-up of the property if all of the family conveyed their interests in the property to him; and that Levels acquired the heirs' interests through various quitclaim deeds, copies of which were attached to and made part of the affidavit. She further states that, at the time of the acquisition by Levels, the title to the property was subject to a recorded installment contract in favor of Clifford Preher; that following mediation Levels expended $18,000 to achieve a settlement with Preher; that at no time during the negotiations, at which Scales was present, did Scales assert any interest in the property; and that thereafter Levels expended further sums to demolish the structure on the property to satisfy demands of the City of Evansville. Christian also states that she was present for most of the discussions between Levels and Scales and has no recollection of any discussion between them as to Scales having an interest in the property or any promise made by Levels to convey any interest in the property to him.

[5] The Affidavit of Heirship stated that Levels is the grandson of the decedent Chester L. Scales; that the decedent was survived by his wife Dorothy Scales, four daughters, and his son Scales; and that, as of the date of the decedent's death, Dorothy Scales owned an undivided one-half interest in the property and each of the children of the decedent, including Scales, owned an undivided one-tenth interest in the property. Each of the heirs of the decedent Chester L. Scales identified in the Affidavit of Heirship, including Scales, executed a quitclaim deed which conveyed his or her respective undivided interest in the property to Levels and expressly referenced the Affidavit of Heirship.

[6] On March 18, 2015, Scales filed a motion to order third party discovery stating that he sought discovery from the Grayson County Detention Center, that it would not provide the discovery without a court order, and that the discovery sought is limited to visitation records and recorded phone conversations between the parties in November and December 2013. Levels filed an objection stating in part that he was not made aware of any previous effort by Scales to make third party discovery, that if he had been notified he would have objected to any effort, and that any discussion that may have occurred would be in the nature of settlement discussions and are not discoverable.

[7] On March 30, 2015, Scales filed a motion to deny Levels's summary judgment motion together with designated evidence, which included a copy of a settlement check for $17,000 and the affidavits of Charis Thomas, William Anderson, Darryl Christian, Scales, and Tarita Moore. Thomas's affidavit states that he was aware that Scales only removed his name from the property

because of a child support lien against him and that Levels agreed to place Scales's name back on the property once the child support was paid in full. Anderson's affidavit states that Scales's name was removed from the property solely due to the fact there was an outstanding child support order of $27,000; that upon full payment of the support order Scales's name would be reattached to the property; and that, in addition, Levels expressed that he was in need of money, that he was willing to release his fifty-percent portion of the property to an investor for $45,000, of which he would receive $36,000 and the remaining amount would be applied to back taxes and fees associated with the razing of the building, and that it was confirmed that Scales would retain his fifty percent of the property. Darryl's affidavit states that he was present in a vehicle with Scales, Dorothy, and Alethea when Levels was on the phone and placed on speaker phone, that Levels stated that he and Scales had an understanding, and that Scales then turned over his signed quitclaim deed to Alethea.

[8] In his affidavit, Scales states that at one time he had a child support debt of $27,000 which could send any property in his name into a forced sale, that his name had become attached to the property before he could pay that debt, that he had his name removed from the property until he was able to resolve his child support debt, and that he and Levels entered into an oral agreement that his name would be returned to the property upon settlement of the child support debt. Scales states that he had visited Levels at the detention center in Leitchfield, Kentucky, in November and December of 2013, "which can prove from [Levels's] own mouth that we . . . indeed have an Oral Agreement," and

that in April 2013 he paid $17,000 in child support settlement which brought his balance to zero and fulfilled his end of the oral agreement. Appellant's Appendix at 67. He further states that he "lived up to [his] end of the Oral Agreement" and "began to move forward in action to preserve the property with sense of ownership," that in May 2013 he paid $2,300 in taxes on the property, he also spent thousands on maintenance of the property, there have been no citations from the City of Evansville for weeds, he placed cable wire barriers to keep intruders off the property, and that he had gravel and sand brought to the property for the purpose of filling holes to prevent the collecting of water and mosquitos from reproducing. *Id.*

[9] The designated affidavit of Moore, which was filed in December 2013 in a paternity action following an information for contempt for nonpayment of child support, states that prior to April 5, 2013, a child support arrearage of $27,000 existed and had accrued against Scales and that, by agreed entry and order effective April 5, 2013, the existing arrearage was compromised and reduced to $17,000 by Moore and Scales, thereby resolving the support arrearage through that date.

[10] On April 28, 2015, the court held a hearing at which Levels's counsel stated that, at the time the Affidavit of Heirship was prepared, a building existed on the property, inside there was an old tavern that was not in operation, the grass was growing, and there were a lot of code enforcement questions concerning the property. Counsel also stated that Levels wished to acquire an interest in the property and possibly develop it, that the Affidavit of Heirship was prepared

to show the property's ownership, and that then there was a process of acquiring quitclaim deeds from all of the property holders, including Scales. He stated that an unresolved installment contract of record related to the property was discovered, Levels filed suit to quash the installment contract, and after mediation Levels paid about $19,000 to settle the case. Levels's counsel argued in part that Scales's theory of liability is based on a joint effort to remove Scales from ownership in order to thwart the collection of child support through a paternity action, that if the lien existed in 2011 then, whether or not Scales deeded the property away, the lien stayed with the property and there was no consideration and no basis for reliance, and that the court should grant the motion for summary judgment based on the statute of frauds.

[11]   Scales, *pro se*, argued that it was "simply because I had that debt, and we didn't want a debt of mine to affect the process of us acquiring this land, transforming it to . . . to do business on it, and so in a good will effort, I transferred my stake in the land, and in that we had an agreement that since it was just us two parties who were interested because none of my siblings were ever interested in the property, I was the one who always had a historical attachment to it . . . ." Transcript at 15. He argued that his stake went from ten to fifty percent "because that is our arrangement, we was the last two people, we were the only two people who were interested in this property" and "this is how it all of a sudden came . . . this is how it ultimately manifested through these Quit-Claim Deeds." *Id*. at 16. He also argued that he paid $17,000 to bring his child support balance down to zero, that since then he paid $2,300 in taxes on the

property, he maintained the property ever since Levels became incarcerated over two years earlier, the property is located in front of his home, and that at some point Levels had legal issues and extreme legal fees and "they tried to sell the property out from under me before they put my name back on this property." *Id.* at 18.

[12] Levels's counsel responded that Scales gave up his ten-percent interest in the property at a time the property had issues, Levels then proceeded to settle the issue with the installment contract, Scales then came back on the scene, and that it was unclear whether Scales was seeking the benefit of the bargain or the loss of his ten-percent interest.

[13] On October 12, 2015, the court entered an order granting Levels's motion for summary judgment. Scales filed a motion to correct error stating that, following the April 28, 2015 hearing, the parties met inside the judge's chambers and were advised to reach an agreement and the parties agreed that sixty days would suffice, that on October 7, 2015, the parties met and advised the judge that they could not reach an agreement, and that the court later ruled on the summary judgment motion. Scales argued that the fact the court advised the parties to reach some form of agreement makes it obvious that a material fact is still in dispute. The court denied the motion to correct error.

## Discussion

[14] The issue is whether the trial court erred in entering summary judgment in favor of Levels and against Scales or abused its discretion in denying Scales's

motion to correct error. We generally review rulings on motions to correct error for an abuse of discretion. *Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265, 1270 (Ind. 2008), *reh'g denied*; *Ind. Bureau of Motor Vehicles v. Charles*, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before it, or the reasonable inferences drawn therefrom. *Lighty v. Lighty*, 879 N.E.2d 637, 640 (Ind. Ct. App. 2008), *reh'g denied*.

[15] In reviewing an order granting or denying summary judgment, our standard of review is the same as it is for the trial court. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the non-moving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the non-moving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* An appellate court reviewing a challenged trial court summary judgment ruling is limited to the designated evidence before the trial court, but is constrained to neither the claims and arguments presented at trial nor the rationale of the trial court ruling. *Id.*

[16] Scales, *pro se*, argues there was an agreement to reattach his name to the deed of the property, that affidavits he submitted affirm there was an agreement regarding reattaching his name to the property, and that his designated

materials conflict with Levels's designated materials. He claims the statute of frauds is not applicable based on the doctrines of part performance and promissory estoppel, that the primary reason he deeded the property to Levels was because Levels promised to reattach his name after he paid his child support obligation and paid costs to improve the property, and that, "even if the Court determined that [he] would have had to pay the child support obligation regardless of the oral promise made by Levels," he "would have never paid the costs for any improvements on the property had Levels not made the oral promise to reattach [his] name to the property once said costs were paid." Appellant's Brief at 10. Scales argues that the information he sought through his motion to order third party discovery would have assisted in determining whether an oral agreement exists and that the trial court should have granted his motion. He also asserts that he paid $2,300 in property taxes for the property in 2013, erected a cable barrier around the property, cut the grass weekly, filled in holes on the property, and kept it clear of debris.

[17] Levels maintains that there is no written document executed by him related to the sale of the property and that the evidence does not support part performance or estoppel to circumvent the statute of frauds. He contends that there is no evidence he requested or knew of the property tax payments by Scales until after they were made, and no evidence that Scales made material or substantial improvements to the property. He also asserts he did not induce Scales's child support payment and that the payment was induced by the acts of the child's representatives to collect the support. As to Scales's motion to order third party

discovery, Levels asserts that Scales has not shown that he complied with Ind. Trial Rules 34(C) and 45(B) as a prerequisite to seeking a court order under Trial Rule 37.[1]

[18] The Indiana Statute of Frauds requires that contracts for the sale of real property be in writing. *Jernas v. Gumz*, 53 N.E.3d 434, 445 (Ind. Ct. App. 2016) (citing *Fox Dev., Inc. v. England*, 837 N.E.2d 161, 166 (Ind. Ct. App. 2005)), *trans. denied*. Found at Ind. Code § 32-21-1-1, the Statute provides that a person may not bring an action involving a contract for the sale of land unless the contract "is in writing and signed by the party against whom the action is brought or by the party's authorized agent." The Statute is intended to preclude fraudulent claims that would probably arise when one person's word is pitted against another's. *Jernas*, 53 N.E.3d at 446. To satisfy the Statute, an enforceable contract for the sale of land must be evidenced by some writing which has been signed by the party against whom the contract is to be enforced or his authorized agent, which describes with reasonable certainty each party and the land, and which states with reasonable certainty the terms and

---

[1] Ind. Trial Rule 34 relates to a party's request to produce and permit the party to inspect documents or electronically stored information. Trial Rule 34(C) relates to the application of the rule to non-parties and provides in part that a request to a person other than a party "shall be served upon other parties and included in or with a subpoena served upon such witness or person" and that "[n]either a request nor subpoena to produce or permit as permitted by this rule shall be served upon a non-party until at least fifteen (15) days after the date on which the party intending to serve such request or subpoena serves a copy of the proposed request and subpoena on all other parties." Trial Rule 45 relates to subpoenas. Trial Rule 37 governs the failure to cooperate in discovery and provides in part that, if a person, in response to a request submitted under Rule 34, fails to respond, "the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request."

conditions of the promises and by whom and to whom the promises were made. *Hrezo v. City of Lawrenceburg*, 934 N.E.2d 1221, 1227 (Ind. Ct. App. 2010), *trans. denied*.

Scales does not argue that his purported verbal agreement with Levels was evidenced by some writing signed by Levels and containing the terms and conditions of the agreement. Rather, he argues that two exceptions to the Statute of Frauds, the doctrines of promissory estoppel and part performance, are applicable.

### A. *Promissory Estoppel*

Oral promises that are not enforceable under the Statute of Frauds may nonetheless be enforced under the equitable doctrine of promissory estoppel. *Hrezo*, 934 N.E.2d at 1230. A party seeking to defeat the Statute of Frauds requirement based upon promissory estoppel must establish: (1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise. *Id.* at 1231 (citing *Spring Hill Developers, Inc. v. Arthur*, 879 N.E.2d 1095, 1100 (Ind. Ct. App. 2008) (citation omitted)).

We have observed that the fifth element creates a high bar for the party seeking to establish promissory estoppel. *Spring Hill*, 879 N.E.2d at 1101. The Indiana Supreme Court "has explained the type of injury required to establish" the fifth element:

[I]n order to establish an estoppel to remove the case from the operation of the Statute of Frauds, the party must show [ ] that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss.

In other words, neither the benefit of the bargain itself, nor mere inconvenience, incidental expenses, etc. short of a reliance injury so substantial and independent as to constitute an unjust and unconscionable injury and loss are sufficient to remove the claim from the operation of the Statute of Frauds.

*Id.* at 1101-1102 (quoting *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001) (quoting *Whiteco Indus. v. Kopani*, 514 N.E.2d 840, 845 (Ind. Ct. App. 1987) (citation omitted), *trans. denied*)).

[22] In *Spring Hill*, we observed that the Indiana Supreme Court, in *Brown*, reversed the trial court's judgment enforcing the defendant's oral promise to convey a house based on a theory of promissory estoppel, and we noted that "[c]ritical to the court's conclusion was its observation that *Whiteco* stood for the proposition that '[i]f what the party gave up in reliance on an oral promise was no greater than what the party would have given up in any event, then the consideration is deemed insufficient to remove the oral promise from the operation of the Statute of Frauds.'" *Id.* at 1102 (citing *Brown*, 758 N.E.2d at 53). We observed that thus, although the plaintiff quit her job, dropped out of college, and moved from Missouri to Indiana in reliance on the defendant's promise to convey a house to her, the court reasoned such injuries merely established that the plaintiff "was inconvenienced as well as denied the benefit that [the

defendant's] promise was intended to confer," but not that the defendant's "oral promise resulted in the 'infliction of an unjust and unconscionable injury and loss.'" *Id.* (citing *Brown*, 758 N.E.2d at 53).

[23] Further, we noted that, for the promissory estoppel doctrine to limit application of the Statute of Frauds, "the reliance injury must be not only (1) independent from the benefit of the bargain and resulting incidental expenses and inconvenience, but also (2) so substantial as to constitute an unjust and unconscionable injury." *Id.* at 1103 (citing *Coca-Cola Co. v. Babyback's Int'l, Inc.*, 841 N.E.2d 557, 569 (Ind. 2006)). We also observed that "the test in *Babyback's* addresses reliance injuries only" and that "expectancy injuries are excluded from the unconscionability analysis." *Id.* (citing *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 122 (Ind. 1994) ("To the extent that the plaintiff's request for estoppel seeks to compel the defendants to resume their employment of the plaintiff, or seeks damages in the form of lost wages following his discharge, such requested relief represents expectancy damages, not reliance costs, and thus is not recoverable.")).

[24] In this case, Scales alleges that he relied on Levels's promise to convey an interest in the property to him when he made a settlement payment toward his child support arrearage and by incurring costs to maintain and improve the property. To the extent Scales points to his settlement payment, we note that Scales had already been ordered to make support payments. Scales's action of making the payment toward his arrearage was no greater than what he was required to do in any event and is insufficient to remove the oral promise from

the operation of the Statute of Frauds. *See Brown*, 758 N.E.2d at 53 ("If what the party gave up in reliance on an oral promise was no greater than what the party would have given up in any event, then the consideration is deemed insufficient to remove the oral promise from the operation of the Statute of Frauds."). We also observe that estoppel, including promissory estoppel, is a judicial doctrine sounding in equity. *See id.* at 51-52; *Lightle v. Harcourt Mgmt. Co.*, 634 N.E.2d 858, 860 (Ind. Ct. App. 1994) (observing the doctrine of promissory estoppel is an equitable claim for relief), *trans. denied*. The unclean hands doctrine is an equitable tenet that demands that one who seeks equitable relief be free of wrongdoing in the matter before the court, and the purpose of the unclean hands doctrine is to prevent a party from reaping benefits from his or her misconduct. *Coppolillo v. Cort*, 947 N.E.2d 994, 1000 (Ind. Ct. App. 2011). To the extent Scales transferred his one-tenth interest in the property to Levels in an attempt to avoid full and timely compliance with his child support obligation, he should not reap a benefit from his conduct.

[25] With respect to the costs Scales asserts he incurred to maintain or improve the property, we note that he states in his affidavit that he made a property tax payment in 2013, spent thousands on maintenance of the property, placed cable wire barriers to keep intruders off the property, and had gravel and sand brought to the property for the purpose of filling holes. Levels designated the affidavit of Christian, which states that, after he acquired the heirs' interests in the property, Levels expended $18,000 to obtain a settlement with the contract purchaser under an installment contract and expended further sums to demolish

the structure on the property to satisfy demands of the City of Evansville. Scales does not claim he made any contributions toward these costs. Moreover, Scales was not precluded from receiving the reasonable value of his services and reimbursement of the amounts he expended. *See Spring Hill*, 879 N.E.2d at 1103-1104 (holding that the reliance injuries Spring Hill and Brinkworth incurred in developing the property into a suitable condition for subdivision and sale "are not unconscionable because they pertain to Brinkworth's services, and nothing prevents Brinkworth from receiving the reasonable value of his services based on quantum meruit . . . or, more generally, from receiving restitution based on unjust enrichment").

[26] Based on the designated evidence, including evidence of the costs to maintain and improve the property incurred by Scales relative to those costs incurred by Levels, and keeping in mind Scales is not prevented from receiving reimbursement of the costs he incurred to maintain and improve the property, we conclude that none of Scales's injuries is so substantial as to constitute an unjust and unconscionable injury and that Scales cannot show that injustice can be avoided only by enforcement of Levels's purported promise. *See id.* at 1104 (holding, where Spring Hill and Brinkworth filed a complaint alleging the Arthurs agreed to convey property to Spring Hill and seeking an order of specific performance to convey the property, that none of Spring Hill and Brinkworth's reliance injuries, which they alleged included time and expense toward the development of the property, was so substantial as to constitute an unjust and unconscionable injury, that they could not show that injustice could

be avoided only by enforcement of the promise to convey the property, and that therefore promissory estoppel did not apply to remove the promise from the Statute of Frauds).  Accordingly, promissory estoppel does not apply to remove Levels's purported promise from the Statute of Frauds.

B.  *Part Performance*

[27]	The part performance doctrine is based on the rationale that equity will not permit a party who breaches an oral contract to invoke the Statute of Frauds where the other party has performed his part of the agreement to such an extent that repudiation of the contract would lead to an unjust or fraudulent result.  *Id.* Where the oral promise is to sell an interest in land, "'some combination' of the following acts of performance are sufficient for the doctrine to apply: 1) payment of the purchase price or a part thereof; 2) possession; and 3) lasting and valuable improvements on the land." *Id.* (citations omitted).

[28]	An alternative way to determine whether the doctrine applies is to use the standard expressed in the Restatement:

> A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement.

*Id.* at 1105 (citing RESTATEMENT (SECOND) OF CONTRACTS § 129; *Summerlot v. Summerlot*, 408 N.E.2d 820, 828 (Ind. Ct. App. 1980) ("Where one party to an

oral contract in reliance on that contract has performed his part of the agreement to such an extent that repudiation of the contract would lead to an unjust or fraudulent result, equity will disregard the requirement of a writing and enforce the oral agreement.")). Comment b to Section 129 states that the reliance of the promisee must provide "a compelling substantive basis for relief in addition to the expectations created by the promise" and that determining whether this substantive basis is established "requires consideration of the adequacy of the remedy of restitution." *Id.*

[29] In this case, even if Scales changed his position in reliance on Levels's purported promise, we cannot find that the nature of the injury is so substantial that injustice can be avoided only through specific performance. As noted above, Scales was already required to pay his child support arrearage, and he was not prevented from receiving the reasonable value of his services and reimbursement of his costs in maintaining the property. Scales cannot establish that injustice can be avoided only through specific performance. *See id.* (holding that, assuming Brinkworth sufficiently changed his position in reliance on the promise to convey the property, the nature of the injury cannot be characterized as so substantial that injustice can be avoided only through specific performance, that nothing prevented Brinkworth from receiving the reasonable value of his services or restitution or both, and that the part performance doctrine does not apply to remove the promise from the Statute of Frauds). Accordingly, the part performance doctrine does not apply to remove Levels's promise from the Statute of Frauds.

[30] Because the doctrines of part performance and promissory estoppel do not apply to remove Levels's alleged promise from the Statute of Frauds, and the writing requirement of the Statute of Frauds was not satisfied, any verbal agreement between Scales and Levels regarding the transfer of an interest in the property to Scales is unenforceable. *See id.* 1097-1105 (concluding that the trial court properly applied the Statute of Frauds to bar Spring Hill and Brinkworth's complaint, rejecting the arguments that the equitable doctrines of promissory estoppel and part performance were applicable, and affirming the trial court's grant of summary judgment in favor of the Arthurs).

[31] We also observe that, to the extent Scales asserts that his designated evidence conflicts with Levels's designated evidence as to whether a verbal agreement existed and that the trial court should have granted his motion to order third party discovery because the discovery would have assisted the court in determining whether an oral agreement exists, we have explained that the Statute of Frauds "does not govern the formation of a contract but only the enforceability of contracts that have been formed." *Jernas*, 53 N.E.3d at 445 (citing *Schuler v. Graf*, 862 N.E.2d 708, 712-713 (Ind. Ct. App. 2007) (citing *Fox Dev.*, 837 N.E.2d at 165); *Owens v. Lewis*, 46 Ind. 488, 518 (1874) (noting an agreement that is not in writing, although required to be in writing by the Statute of Frauds, is not invalid, and that the statute only inhibits actions to enforce the agreement)). Thus, even assuming Scales and Levels entered into a verbal agreement, the agreement is unenforceable because it was not memorialized in writing as required by the Statute of Frauds.

## *Conclusion*

[32] For the foregoing reasons, we affirm the trial court's entry of summary judgment in favor of Levels and denial of Scales's motion to correct error.

[33] Affirmed.

Robb, J., and Mathias, J., concur.