

FILED
May 28 2015, 7:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

James E. Ayres
Wernle, Ristine & Ayers
Crawfordsville, Indiana

ATTORNEY FOR APPELLEE

Gregory H. Miller
Crawfordsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Terry Huber,<br>*Appellant-Defendant,*<br><br>v.<br><br>Roger Hamilton,<br>*Appellee-Plaintiff.* | May 28, 2015<br><br>Court of Appeals Case No.<br>54A01-1404-PL-154<br><br>Appeal from the Montgomery Circuit Court<br><br>The Honorable Harry A. Siamas, Judge<br><br>Case No. 54C01-1309-PL-709 |

**Vaidik, Chief Judge.**

# Case Summary

[1]     Two parties executed a land contract for the sale of commercial real estate in Crawfordsville, Indiana.  The Statute of Frauds requires land contracts to be in writing.  The written land contract called for monthly payments, with a balloon payment to be made at the end of the term.  When the buyer was not able to make the balloon payment at the end of the term, he approached the seller

about extending the due date for the balloon payment. Although the parties made an oral agreement about extending the due date for the balloon payment, each side presented a different version of that agreement.

[2] The trial court, which could not determine the details of the parties' agreement because it found that the evidence was unpersuasive both ways, concluded that the oral agreement was unenforceable because it was not in writing. Therefore, the trial court concluded that the buyer breached the land contract when he failed to make the balloon payment when it was originally due.

[3] We agree with the trial court that the Statute of Frauds applies to the parties' oral agreement to modify the written land contract and, therefore, the oral agreement is unenforceable because it was not reduced to writing. Furthermore, we find that neither party has met its heavy burden of removing the oral agreement from the Statute of Frauds based on the equitable doctrine of promissory estoppel. Finally, because the oral agreement is unenforceable, we agree with the trial court that the buyer breached the written land contract by failing to make the balloon payment when it was originally due.

# Facts and Procedural History

[4] On November 15, 2007, Roger Hamilton sold commercial real estate located at 111, 113-115, and 127 West Market Street in Crawfordsville to Terry Huber. Huber operated Old Town Pizzeria at 127 West Market Street, and there were tenants—Moore's Jewelry and Digger's Café—in the other buildings.

According to the terms of the parties' contract,[1] the purchase price was $150,000, with a down payment of $20,000. Ex. 1. The balance of $130,000 was payable in monthly installments of $1132.44 with 6.5% interest from January 2, 2008, to November 30, 2010, at which point "the then unpaid balance shall be payable in full unless renegotiated . . . ." *Id.*

[5] The contract also provides that Huber would receive title to the properties "upon the payment of the money and interest at the time and in the manner [specified in the contract], and the prompt and full performance by [Huber] of all his covenants and agreements [specified in the contract] . . . ." *Id.* The contract states the following regarding breach of the contract:

> In the event [Huber] shall, for any reason, fail or refuse to make any payment due under this contract, including annual payment, taxes, assessments or insurance premiums for a period of thirty (30) days after the same become due, and upon an additional thirty days' written notice, [Huber] shall then be deemed to be in default of the contract. In that event, the entire balance of principal and interest due shall become due and payable at the option of [Hamilton]. No delay on the part of [Hamilton] in exercising this option shall operate as a waiver or preclude the exercise of such option at any time during the continuance of such default or upon the occasion of any subsequent default. [Hamilton] shall be entitled to recover judgment against [Huber] for such sum without relief from valuation, appraisement laws together with Court costs, attorney's fees and any other damages which may have been caused by [Huber's] breach of this contract. [Hamilton] shall also have the right to recover the judgment in whole or in part by foreclosure of [Huber's] interest hereunder and the sale of the real estate, and shall have the right to have a receiver appointed to

---

[1] Huber's attorney prepared the "Installment Purchase Agreement" that the parties signed.

take charge of, rent, manage and conserve the real estate herein described during the pendency of any foreclosure action.

*Id.*

[6] As the due date for the balloon payment approached in late 2010, Huber talked to Hamilton about extending the contract.[2] According to Huber, Hamilton told him that he could pay an additional $300 per month, in cash, in order to "keep the contract going"; Huber said there was no discussion on the timeline or how the $300 would be applied. Tr. p. 9-10, 22. According to Hamilton, however, he "agreed . . . [to] go another year [in order to] give [Huber] time to find the financing." *Id.* at 69. In addition, Hamilton said he told Huber that the additional $300 per month would not be applied to principal but rather was a penalty for not paying the balloon payment on time. *Id.* at 70. Hamilton submitted his tax returns showing that he reported the additional $300 per month. In any event, the agreement to extend the contract was oral and never reduced to writing.

[7] Huber continued to make the monthly contract payments plus the additional $300 per month. He made thirty-four additional payments of $300—for a total of $10,200—between December 2010 and September 2013. In December 2011

---

[2] Huber claims that he could not get financing because underground storage tanks were below the pizza shop, and Hamilton did not tell him about the tanks when they executed the land contract. According to Hamilton, however, he told Huber about the underground storage tanks (all but one of which had been removed) and did not believe there were any environmental issues with the property. The court noted these conflicting versions in its findings. *See* Appellant's App. p. 30 (Finding No. 5).

Hamilton asked Huber about making the balloon payment; Huber said he would but never did.

[8] In August 2013 Hamilton's attorney sent Huber a written notice of default and demanded payoff within thirty days:

> Mr. Hamilton advises that you were to have paid the balance of the purchase price . . . by November 30, 2010. As a result of your failure to pay the balance of the purchase price by November 30, 2010, you are in default of your Installment Purchase Agreement.
>
> * * * * *
>
> Your failure to pay the [balance] within thirty (30) days of the date of this letter will result in Mr. Hamilton re-taking the subject real estate and directing any and all rent payments from any and all tenants to him. In addition, Mr. Hamilton will have the right to file a lawsuit against you to collect any monies remaining owing to him under the Installment Purchase Agreement.

Ex. D.

[9] Huber filed a complaint for declaratory judgment against Hamilton on September 13, 2013. Huber alleged that the written contract provided that the unpaid balance would be "due and payable at the end of November 2010, unless renegotiated"; however, the parties renegotiated the contract "to provide that the balance[-]due provision was declared void and the periodic[-]payments provision extended indefinitely until payment in full."[3] Appellant's App. p. 8, 9. Huber alleged that for consideration of the modification, he agreed to pay an

---

[3] According to Huber's amortization calculation, the contract would be paid off in July 2019. *See* Appellant's Br. p. 11 (citing Appellant's App. p. 19, 39).

additional $300 per month, which was to be applied to principal. Accordingly, Huber asked the trial court for a judgment "declaring and adjudicating the respective rights and duties of [Huber] and [Hamilton] under the contract as modified and further declaring that [Hamilton] does not have the right to declare [Huber] in default so long as payments of $1,432.44 [($1132.44 plus $300)] per month are made timely." *Id.* at 9. At Hamilton's request, the trial court ordered that beginning October 1, 2013, the tenants at 111 and 113-115 West Market Street "shall direct their monthly rent payments to the Clerk of the Montgomery Circuit Court who shall hold those rent payments in escrow until further order of the Court." *Id.* at 13.

[10] Hamilton filed a counterclaim against Huber to foreclose the land contract. *Id.* at 20. Specifically, Hamilton alleged that he agreed to a one-year extension of the contract—from November 30, 2010, to November 30, 2011—and because Huber failed to make the balloon payment on November 30, 2011, he was "in default." *Id.* at 23. Hamilton asked for a money judgment for the balance as well as a decree "foreclosing Huber's interest in [the] real estate by reason of the parties' land contract and is entitled to an order requiring the Sheriff of Montgomery County to sell said real estate at public sale in the same manner as prescribed for foreclosed mortgage loans." *Id.* at 24. Hamilton also requested attorney's fees.

[11] A bench trial was held. In February 2014 the trial court entered extensive findings and conclusions that (1) the Statute of Frauds applied and therefore the oral modification to the written contract had no effect; (2) Huber was in default

of the written contract because he failed to make the balloon payment when due; (3) the additional payments of $300 per month reduced principal and were not a penalty; (4) Hamilton was entitled to a judgment of $83,477.20 plus $4075 in attorney fees; and (5) the written contract should be foreclosed and the property sold at a Sheriff's sale. The conclusions provide, in relevant part:

> 11. Huber argues for declaratory judgment in that there was an enforceable modification of the contract in December 2010 and that the contract extends until the balance of the purchase price is paid off at the rate of $1,432.44 per month at 6 ½ % interest. Hamilton argues that the contract is in default and that he has the right to acceleration and foreclosure of the contract with the 34 extra $300 monthly payments forfeited as a penalty.
>
> 12. *The Court finds that the evidence is conflicting as to the intention of each party.* While there was an agreement to extend the contract beyond the December 2010 balloon[-]payment deadline Hamilton testified the parties agreed to a one[-]year extension while Huber testified there was no extension time limit. *The evidence is not persuasive one way or the other. Therefore the issue for the court is did Hamilton and Huber enter into an enforceable modification of the written contract?*
>
> 13. The Indiana Statute of Frauds applies. [Text of statute, Indiana Code section 32-21-1-1, omitted]. A modification of a land contract is subject to the requirements of the Statute of Frauds. *The evidence is not persuasive enough to support that any oral agreement of the parties should be removed from the requirements of the Statute of Frauds.*
>
> 14. [The court finds that Huber failed to prove that Hamilton was "guilty of conduct that would constitute laches . . . ."][4]

---

[4] The doctrine of laches is well established and long recognized: "Independently of any statute of limitation, courts of equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for his laches in asserting them." *SMDfund, Inc. v. Fort Wayne-Allen Cnty. Airport Auth.*, 831 N.E.2d 725, 729 (Ind. 2005). Laches requires: (1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party. *Id.* Huber does not make a cogent argument concerning laches on appeal.

15. Based on the foregoing the Court finds that *Huber is in default on the written contract* between the parties because he failed to pay off the accelerated balance of all payments due. The Court finds that *the additional $300 per month payments made by Huber beginning December 2010 reduced principal and are not penalty payments.* Therefore the Court finds that as of October 1, 2013 the amount Huber owes to Hamilton under the contract is $83,477.20 with interest at the rate of 6 ½ % until the date of this judgment. In addition pursuant to the written contract Hamilton is entitled to recover reasonable attorney fees in the amount of $4,075.00.

16. The Court finds that the written contract should be foreclosed and the Sheriff of Montgomery County, Indiana shall sell the property at Sheriff's sale and the proceeds thereof shall be applied to the judgment in the same manner under the laws governing foreclosure sales of mortgaged property. Hamilton may also bid for the property with the judgment due to him. . . .

*Id.* at 30-32 (emphases added, citations omitted).

[12]  Huber filed a motion to correct errors, which the trial court denied. The court's order provides, in pertinent part:

1. [Huber's] first argument is that I.C. 26-2-9-4 applies to the facts of this case instead of I.C. 32-21-1-1 [Statute of Frauds]. [Huber] is mistaken. I.C. 26-2-9-4 applies to credit agreements. . . . A land contract is not a credit agreement and Hamilton was not Huber's creditor as [Huber] asserts in the Motion. . . . I.C. 26-2-9-4 has no application to the facts of this case.

2. The remainder of [Huber's] arguments invites the Court to reweigh the facts of the case and to reconsider the credibility of testimony. The Court finds none of [Huber's] assertions leads the Court to a different result.

3. The Court found that Huber breached his contract with Hamilton because Huber failed to make the required balloon payment to Hamilton. This breach of the contract entitled Hamilton to be awarded attorney fees pursuant to the specific terms of the contract. Huber's arguments as to the award of attorney fees ignore that the Court found Huber defaulted on the contract.

4. Huber's argument regarding remedy is that Huber is entitled to the balance of any Sheriff's sale proceeds after payment of costs, taxes and Hamilton's judgment. The Court found that the land contract must be foreclosed and that the Sheriff must proceed in the same manner as he would in a mortgage[-]foreclosure sale. The Court recognized that Huber has equity in the contract and that is why the Court ordered the contract foreclosed instead of ordering a forfeiture of Huber's payments made under the contract. Huber will be entitled to any balance of sheriff[-]sale proceeds left after payment of real[-]estate taxes due, costs of sale, and payment of any amount due to Hamilton under the judgment. The normal procedure is for the sheriff to pay the balance left to the clerk of the court and Huber may claim these proceeds. To the extent the Court's judgment is not clear on this point it is hereby clarified.[5]

*Id.* at 46-47.

[13] Huber appeals, and Hamilton cross-appeals.

# Discussion and Decision

[14] Huber raises numerous issues on appeal, which we restate as one: is the parties' oral agreement to extend the due date for the balloon payment as set forth in the written land contract enforceable pursuant to the Statute of Frauds?[6]

[15] At Huber's request, the trial court entered finding and conclusions pursuant to Indiana Trial Rule 52. Where, as here, the court enters findings and

---

[5] The Indiana Supreme Court has determined that a land-sales contract is akin to a mortgage and, therefore, the remedy of foreclosure—as opposed to forfeiture—is more consonant with notions of fairness and justice. *Skendzel v. Marshall*, 261 Ind. 226, 301 N.E.2d 641, 650 (1973). Because Huber paid more than a minimal amount of the contract price, the trial court properly ordered foreclosure in this case.

[6] To the extent that Huber's numerous other arguments are not included in this issue, we find them waived for failure to develop them. *See* Ind. Appellate Rule 46(A)(8)(a).

conclusions upon a party's written request, we apply a two-step review. *In re Riddle*, 946 N.E.2d 61, 66 (Ind. Ct. App. 2011). First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* We neither reweigh the evidence nor assess witness credibility, and we consider only the evidence most favorable to the judgment. *Id.* We will set aside the trial court's findings and conclusions only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* We review conclusions of law de novo. *Id.*

[16] Huber contends that the Statute of Frauds, Indiana Code section 32-21-1-1, does not apply to this case.[7] This case involves a land contract. *See* Ex. 1.

---

[7] Rather, Huber contends that the Indiana Lender Liability Act, Indiana Code chapter 26-2-9, applies to this case because our Supreme Court held in *Skendzel* that land contracts are akin to mortgages. *See* 301 N.E.2d at 646 ("Realistically, vendor-vendee should be viewed as mortgagee-mortgagor."). The Indiana Lender Liability Act applies to "credit agreements," "creditors," and "debtors." A "credit agreement" is an agreement to:

> (1) lend or forbear repayment of money, goods, or things in action;
>
> (2) otherwise extend credit; or
>
> (3) make any other financial accommodation.

Ind. Code § 26-2-9-1(a). A "creditor" means:

> (1) a bank, a savings bank, a trust company, a savings association, a credit union, an industrial loan and investment company, or any other financial institution regulated by any agency of the United States or any state, including a consumer finance institution licensed to make supervised or regulated loans under IC 24-4.5;
>
> (2) a person authorized to sell and service loans for the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation, issue securities backed by the Government National Mortgage Association, make loans insured by the United States Department of Housing and Urban Development, make loans guaranteed by the United States Department of Veterans Affairs, or act as a correspondent of loans insured by the United States Department of Housing and Urban Development or guaranteed by the United States Department of Veterans Affairs; or

Under a typical land contract, the seller retains legal title until the total contract price is paid by the buyer.[8] *Skendzel v. Marshall*, 261 Ind. 226, 301 N.E.2d 641, 646 (1973). Payments are generally made in periodic installments. *Id.* Legal title does not vest in the buyer until the contract terms are satisfied, but equitable title vests in the buyer when the contract is executed. *Id.* The Statute of Frauds provides, in relevant part:

> (b) A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:
>
> * * * * *
>
> (4) An action involving any contract for the sale of land.

Ind. Code § 32-21-1-1. The law is settled that "any contract which seeks to convey an interest in land is required to be in writing." *Brown v. Branch*, 758

---

> (3) an insurance company or its affiliates that extend credit under a credit agreement with a debtor.

Ind. Code § 26-2-9-2. Finally, a "debtor" means a person who:

> (1) obtains credit under a credit agreement with a creditor;
>
> (2) seeks a credit agreement with a creditor; or
>
> (3) owes money to a creditor.

Ind. Code § 26-2-9-3. Because "creditor" has a specific definition that does not apply to Hamilton, the Indiana Lender Liability Act does not apply to this case. Accordingly, *Sees v. Bank One, Indiana, N.A.*, upon which Huber relies, does not apply either. *See* 839 N.E.2d 154 (Ind. 2005) (noting that the Bank, a creditor, loaned Sees money).

[8] Although located in a different part of the Indiana Code, a "land contract" is defined as "a contract for the sale of real estate in which the seller of the real estate retains legal title to the real estate until the total contract price is paid by the buyer." Ind. Code § 24-4.4-1-301(36).

N.E.2d 48, 51 (Ind. 2001) (emphasis omitted). That is, Indiana courts have long applied the principle that an agreement to convey land is subject to the Statute of Frauds' writing requirement. *Id.*; *see also Johnson v. Sprague*, 614 N.E.2d 585, 588 (Ind. Ct. App. 1993) (holding that "an enforceable contract for the sale of land must be evidenced by some writing: (1) which has been signed by the party against whom the contract is to be enforced or his authorized agent; (2) which describes with reasonable certainty each party and the land; and, (3) which states with reasonable certainty the terms and conditions of the promises and by whom and to whom the promises were made."). Furthermore, where a contract is required by law to be in writing, it can only be modified by a written instrument. *Maglaris v. Claude Neon Fed. Co.*, 101 Ind. App. 156, 198 N.E. 462, 463 (1935); 6 Ind. Law Encyclopedia *Contracts* § 103 (2008).

[17] Requiring a writing for transactions concerning the conveyance of real estate is consistent with the underlying purposes of the Statute of Frauds, namely: (1) to preclude fraudulent claims that would likely arise when the word of one person is pitted against the word of another and (2) to remove the temptation of perjury by preventing the rights of litigants from resting wholly on the precarious foundation of memory. *Brown*, 758 N.E.2d at 51; *see also Coca-Cola Co. v. Babyback's Int'l, Inc.*, 841 N.E.2d 557, 567 (Ind. 2006). These purposes are underscored in this case because although the parties had an agreement to extend the balloon payment, the trial court found that it could not determine the details of that agreement. *See* Appellant's App. p. 30-31 (Conclusion No. 12).

[18] We find that the Statute of Frauds is unambiguous and provides a bright-line rule that applies to the parties' November 2007 written land contract *and* December 2010 oral agreement to extend the due date for the balloon payment as set forth in the written land contract. *See Brown*, 758 N.E.2d at 51. That is, because the land contract was required to be in writing, any modification to it also had to be in writing. Accordingly, the parties' oral agreement is not enforceable because it was not in writing.

[19] Nevertheless, even when oral agreements fall within the Statute of Frauds, they may still be enforced under the equitable doctrine of promissory estoppel. *Id.* Both Huber and Hamilton rely on this doctrine.

[20] The estoppel doctrine is based on the rationale that a person whose conduct has induced another to act in a certain manner should not be permitted to adopt a position inconsistent with such conduct so as to cause injury to the other. *Spring Hill Developers, Inc. v. Arthur*, 879 N.E.2d 1095, 1100 (Ind. Ct. App. 2008) (citing 31 C.J.S. *Estoppel and Waiver* § 2 (1996)). Coupled with the Statute of Frauds, the two represent alternative and sometimes competing means to achieve the same ends of avoiding injustice:

> The statute of frauds was designed as the weapon of the written law to prevent fraud, while the doctrine of estoppel is that of the unwritten law to prevent like evil. Each is effective in its appropriate field; both are essential to prevent and redress wrongs, and neither should be allowed to dominate the other.

*Id.* (quoting *Columbus Trade Exch., Inc. v. AMCA Int'l Corp.,* 763 F. Supp. 946, 952 (S.D. Ohio 1991)). Consistent with these observations, a party seeking to preclude application of the Statute of Frauds based on promissory estoppel must establish the following elements: (1) a promise by the promisor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise. *Id.* (citing *First Nat'l Bank of Logansport v. Logan Mfg. Co.,* 577 N.E.2d 949, 954 (Ind. 1991)). In order to establish an estoppel to remove the case from the operation of the Statute of Frauds, the party must show that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights that the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss. *Brown*, 758 N.E.2d at 52. Thus, while it is true that the doctrine of promissory estoppel may remove an oral agreement from the operation of the Statute of Frauds, it is also true that the party asserting the doctrine carries a heavy burden of establishing its applicability. *Id.*

[21] As for the parties' promissory-estoppel arguments, Huber claims that he made the thirty-four additional payments of $300 in reliance on Hamilton's promise to extend the balloon payment until July 2019 and not seek foreclosure. Hamilton cross-appeals arguing that he agreed to postpone the balloon payment in reliance on Huber's promise that the additional payments of approximately $10,000 were a penalty and therefore would not be applied to principal. We find, however, that each party has failed to meet its heavy burden of proving

that promissory estoppel applies. This is because the trial court could not determine whom to believe. The trial court concluded:

> 11. Huber argues for declaratory judgment in that there was an enforceable modification of the contract in December 2010 and that the contract extends until the balance of the purchase price is paid off at the rate of $1,432.44 per month at 6 ½ % interest. Hamilton argues that the contract is in default and that he has the right to acceleration and foreclosure of the contract with the 34 extra $300 monthly payments forfeited as a penalty.
>
> 12. *The Court finds that the evidence is conflicting as to the intention of each party.* While there was an agreement to extend the contract beyond the December 2010 balloon[-]payment deadline Hamilton testified the parties agreed to a one[-]year extension while Huber testified there was no extension time limit. *The evidence is not persuasive one way or the other.*
> . . .

Appellant's App. p. 30-31 (emphases added). Because the trial court could not determine the details of the parties' agreement, neither party can prove that promissory estoppel applies because there is no "promise" to enforce.[9] Furthermore, although Huber asks us to believe his version of the parties'

---

[9] Huber raised as an affirmative defense that Hamilton "accepted an additional $300.00 monthly payment toward the principal and did so for a period of three (3) years without question or objection, while encouraging Terry Huber to make capital improvements to the property." Appellant's App. p. 27. Huber also argues on appeal that Hamilton "acquiesced and made no declaration of breach for the period of a second and then a third year and accepted the increased payment each month." Appellant's Br. p. 11. The trial court found:

> In addition the written contract states in the default and acceleration clause that . . . "No delay on the part of [Hamilton] in exercising this option shall operate as a waiver or preclude the exercise of such option at any time during the continuance of such default or upon the occasion of any subsequent default." *This anti-waiver provision is enforceable and certainly applies to the facts of this case*.

Appellant's App. p. 32 (emphasis added). To the extent that Huber argues that Hamilton waived the anti-waiver provision in the parties' contract by accepting the additional $300 per month for a couple of years before declaring a breach, Huber cannot meet this burden because, as the trial court found, he failed to prove how long the parties agreed to extend the due date for the balloon payment.

agreement as opposed to Hamilton's, we do not determine the credibility of the witnesses on appeal. *See, e.g.*, Appellant's Br. p. 10 ("Hamilton's own testimony would not support [the trial court's judgment] even if he were to be believed."), 13 ("The Court may choose to believe Hamilton and find it a one-year contract, or may choose to believe Huber and find it extended to pay-off" & "Huber's credibility is bolstered and Hamilton's impugned . . . ."), 19 ("Credibility of Hamilton is an issue.").

[22]     Because neither party can meet its burden of taking the oral agreement outside the Statute of Frauds, the Statute of Frauds applies; therefore, the oral agreement is unenforceable, and the parties' rights and obligations are governed by the written land contract. As such, the trial court properly concluded that Huber breached the written land contract when he failed to make the balloon payment by November 30, 2010. In addition, because the oral agreement is unenforceable, the trial court properly determined that Huber's additional payments of $300 per month beginning in December 2010 reduced principal and were not a penalty.

[23]     Finally, Huber argues that the trial court erred in ordering him to pay $4075 in attorney's fees. The written land contract provides for the payment of attorney's fees in the event of a breach. *See* Ex. 1 ("[Hamilton] shall be entitled to recover judgment against [Huber] for such sum without relief from valuation, appraisement laws together with Court costs, *attorney's fees* and any other damages which may have been caused by [Huber's] breach of this contract."

(emphasis added)).  We therefore affirm the trial court's award of attorney's fees to Hamilton.

Affirmed.

Baker, J., and Riley, J., concur.