## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 06 2020, 9:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John J. Schwarz, II
Royal Center, Indiana

ATTORNEY FOR APPELLEES

John B. Powell
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert W. Bohnke,<br>*Appellant-Defendant,*<br><br>v.<br><br>Susan J. Bender, Sandra B. Valentour, and Daniel Buchan,<br>*Appellee-Plaintiff.* | March 6, 2020<br><br>Court of Appeals Case No.<br>19A-PL-1849<br><br>Appeal from the Adams Circuit Court<br><br>The Honorable Chad E. Kukelhan, Judge<br><br>Trial Court Cause No.<br>01C01-1807-PL-11 |

**Tavitas, Judge.**

## Case Summary

Robert Bohnke ("Robert") brings this interlocutory appeal from the trial court's entry of partial summary judgment in favor of Susan Bender ("Susan"), Sandra Valentour ("Sandra"), and Daniel Buchan ("Buchan"), (collectively, the "Appellees"). We affirm.

## Issues

Robert raises seven issues on appeal, one of which we find to be dispositive: whether the trial court erred in entering partial summary judgment in favor of the Appellees.[1]

## Facts

Jennie Ruth Bohnke ("Ruth") owned a life estate in an approximately fifty-six acre farm (the "Farm") in Adams County. Ruth's step-children—Robert, Edward Bohnke ("Edward"), Susan, and Sandra—are siblings, who jointly owned the remainder interests in the Farm as tenants in common. At some time before the events below, Edward sold his remainder interest to Robert.

---

[1] Robert raises the following issues on appeal: (1) alleged error from the trial court's grant of the Appellees' motion to strike alleged hearsay statements from Robert's designated materials; (2) alleged error from the entry of partial summary judgment in the Appellees' favor; (3)-(5) alleged error from the trial court's determinations regarding the Statute of Frauds, promissory estoppel, and waiver; (6) whether the trial court erred when it did not rule upon Robert's motion to strike the Appellees' tendered findings of fact and conclusions of law; and (7) whether the trial court applied an improper legal standard. We do not reach the merits of issues (1), (2), (6), and (7) because issues (3), (4), and (5), which we have consolidated and restated, are dispositive. Error, if any, from the issues we have declined to address is harmless.

[4]     On November 15, 2013, Robert, Sandra, and Susan executed separate purchase agreements (the "contracts") wherein Robert sought to purchase Sandra's and Susan's respective remainder interests for $84,000.00 each. The contracts provided, in pertinent part, as follows:

> 11. **CLOSING AND CLOSING COSTS**: As time is of the essence of this Agreement, it is hereby agreed that the purchase price shall be paid in full, the deed delivered, and all conditions herein complied with and this negotiation closed on or before December 31, 2013, provided however, that any time which may be consumed in correcting defects in title as heretofore provided for, or any interference by action or proceedings of a Court of competent jurisdiction, shall work as an extension of time in which this negotiation may be closed. [Robert] shall be responsible for [Susan's and Sandra's] title insurance, deed, disclosure, contract, lenders [sic] policy of title insurance and all other costs associated with [Robert's] loan.

Appellant's App. Vol. II p. 28.

[5]     Robert was unable to timely secure financing, and the transactions contemplated by the contracts were not completed before December 31, 2013. A dispute exists between the parties regarding whether, as Robert maintains, Susan and Sandra agreed to give Robert additional time to secure financing, subject either to Ruth's relinquishment of her life estate or Ruth's passing. Robert contends that the parties agreed that the contracts would "stay in effect." *Id*. at 21.

[6]     Ruth died on December 27, 2017. Thereafter, Robert, Susan, and Sandra owned the Farm in fee simple. Subsequently, on a date not apparent from the

record, Susan and Sandra permitted Appellee Buchan to farm their jointly-owned acres of the Farm. Sandra and Susan subsequently sold their remainder interests to Appellee Buchan.[2] The effect of Buchan's purchase was that Buchan and Robert each owned fifty percent of the Farm.

[7] On July 25, 2018, Susan and Sandra filed a complaint to partition real estate regarding the Farm to effectuate the purchase agreement with Buchan. Robert filed his answer on August 17, 2018, which he subsequently amended,[3] to add a four-count counterclaim that included, most relevantly, Count II, alleging breach of the contracts, and Count III, alleging promissory estoppel ("counterclaim Counts II and III").[4] Count II of Robert's counterclaim, alleging "Breach of Purchase Agreement[,]" provides:

> 22. [ ] Robert [ ] entered into a purchase agreement with the [Appellees] so as to purchase the [Appellees'] interest in the real estate central to this dispute.
>
> 23. [ ] Robert [ ] was unable to complete the purchase and the [Appellees] agreed that he could do so under the agreement at a future time when either he was able to do so or upon the passing of Ruth Bohnke.

---

[2] It is unclear from the record exactly when Susan and Sandra sold their interests to Buchan.

[3] Robert amended his answer on October 4, 2018.

[4] Count I of Robert's counterclaim alleged "Breach of Lease Agreement[,]" and Count IV alleged "Unjust Enrichment[.]" Appellant's App. Vol. II p. 22.

24. That upon the passing of Ruth Bohnke, the [Appellees] refused to honor the prior purchase agreements.

25. That the [Appellees] entered into an agreement to sell their interest in the real estate to [Buchan] which was directly at odds with their contractual obligation to sell the real estate to [ ] Robert [ ].

26. [ ] Robert [ ] has been damaged by the breach of the purchase agreements by the [Appellees].

*Id.* at 21. Count III of Robert's counterclaim provides:

28. [ ] Robert [ ] maintains that a promise was made by [the Appellees] that the purchase agreements signed by [the Appellees] would stay in effect until a later date whe[n] [Robert] was in a position to pay the purchase price to [Appellees] or after the life estate of Ruth Bohnke was no longer in place.

29. It was foreseeable and reasonable that [ ] Robert [ ] would rely on the promise.

30. [ ] Robert [ ] had actual and reasonable reliance on the promise.

31. The reliance was detrimental to [ ] Robert [ ] in that [ ] Robert [ ] is now suffering harm.

32. Injustice can only be prevented by enforcing the promise.

33. That [ ] Robert [ ] has, to [his] detriment, relied on the promises made by the [Appellees] and [Robert] has suffered damages from such.

*Id*. at 21-22.

[8] Buchan joined the action as a plaintiff on or about January 4, 2019. On February 7, 2019, the Appellees filed a motion for partial summary judgment regarding counterclaim Counts II and III. The Appellees argued, in part, that: (1) "[t]he contracts for the sale of real estate expired by their own terms . . . and no written modification extending the time to close the transaction exists"; (2) Robert's "designated materials establish[ ] no [ ] unjust and unconscionable injury and loss"; and (3):

> [e]ven assuming that [Robert] has [ ] properly plead[ed] the doctrine of waiver, it is not available to him as a defense. Waiver is [ ] "an intentional abandonment or relinquishment of a known right." [ ] [Robert] presented no evidence that [Susan or Sandra] knew of a "right", let alone "an intentional abandonment or relinquishment" of such a right.

Appellant's App. Vol. III pp. 24-25. The Appellees also designated Susan's affidavit wherein she averred:

> 6. Before December 31, 2013, Robert [ ] called me and told me the transaction was "off".

> 7. At no time was there any agreement, promise or understanding, written or oral, to extend the Contract to Purchase Real Estate until after [ ] Ruth [ ] died.

*Id*. at 9.

[9]     On March 25, 2019, Robert filed his response to the Appellees' motion for partial summary judgment, his brief in support, and his designated materials, which included his affidavit and a letter from his counsel, John J. Schwartz, II, to Jerry Sitzlar, who held Ruth's power of attorney ("Schwartz Letter"). On May 10, 2019, the Appellees filed their reply in support of the motion for partial summary judgment; the Appellees also moved to strike Robert's Affidavit and the Schwartz Letter for containing inadmissible hearsay.

[10]    On May 13, 2019, the trial court conducted a hearing on the pending motions and ordered the parties to tender proposed findings of fact and conclusions of law. On July 8, 2019, the trial court ordered stricken: (1) various hearsay statements from Robert's Affidavit; and (2) the entire Schwartz letter. The trial court also entered partial summary judgment in the Appellees' favor as to Counts II and III. Robert now brings this interlocutory appeal, pursuant to Indiana Appellate Rule 14(A)(4).[5]

# Analysis

[11]    Robert appeals from the trial court's entry of partial summary judgment in the Appellees' favor. We review a grant of partial summary judgment in the same manner as does the trial court. *Ballard v. Lewis*, 8 N.E.3d 190, 193 (Ind. 2014). The moving party bears the initial burden of making a prima facie showing that

---

[5] Although we question whether this appeal is properly brought pursuant to Indiana Appellate Rule 14(A)(4), the Appellees do not raise such an argument. We proceed to address the merits of the claims.

there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden; but if the moving party succeeds, the non-moving party must then come forward with evidence that establishes the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the non-moving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.*

[12] "An appellate court reviewing a challenged trial court summary judgment ruling is limited to the designated evidence before the trial court, but is constrained to neither the claims and arguments presented at trial nor the rationale of the trial court ruling." *Id.* Where a challenge to the trial court's summary judgment ruling presents only legal issues or a question of statutory interpretation, it is reviewed *de novo*. *Horejs v. Milford*, 117 N.E.3d 559, 562 (Ind. 2019).

[13] In granting partial summary judgment for the Appellees, the trial court found:

> 35. The Contract[s] in question state[ ] "time is of the essence" and the transaction[s] w[ere] to be "closed on or before December 31, 2013". [The transactions were] not closed by that deadline nor extended by the two specified exceptions.
>
> 36. Further, there was no promise, contract, or agreement or memorandum or note describing the promise, contract or agreement . . . in writing and signed by the party against whom

the action is brought . . . . extending this deadline as required by Indiana Code § 32-21-1-1.

37. Robert has not presented sufficient facts to establish all the required elements of the doctrine of promissory estoppel or waiver and therefore the [Appellees] are entitled to summary judgement [sic] on Counts II and III of [Robert's] Counterclaim.

Appellant's App. Vol. II pp. 16-17.

## I.    *Statute of Frauds*

Robert argues that the trial court erred in finding that the Statute of Frauds defeated Count II of Robert's counterclaim. The Statute of Frauds requires land contracts to be in writing. *Huber v. Hamilton*, 33 N.E.3d 1116, 1117 (Ind. Ct. App. 2015). As we have stated:

The Statute of Frauds provides, in relevant part:

(b) A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:

\* \* \* \* \*

(4) An action involving any contract for the sale of land.

Ind. Code § 32-21-1-1. The law is settled that "any contract which seeks to convey an interest in land is required to be in writing." That is, Indiana courts have long applied the principle that an agreement to convey land is subject to the Statute of Frauds' writing requirement. *Id.; see also Johnson v. Sprague,* 614 N.E.2d 585, 588 (Ind. Ct. App. 1993) (holding that "an enforceable contract for the sale of land must be evidenced by some writing: (1) which has been signed by the party against whom the contract is to be enforced or his authorized agent; (2) which describes with reasonable certainty each party and the land; and, (3) which states with reasonable certainty the terms and conditions of the promises and by whom and to whom the promises were made."). *Furthermore, where a contract is required by law to be in writing, it can only be modified by a written instrument.*

*Huber*, 33 N.E.3d at 1122-23 (some citations omitted).

[15] Requiring a writing for a transaction that seeks to convey real estate "is consistent with the underlying purposes of the Statute of Frauds[,] namely: (1) to preclude fraudulent claims that would likely arise when the word of one person is pitted against the word of another[;] and (2) to remove the temptation of perjury by preventing the rights of litigants from resting wholly on the precarious foundation of memory." *Id*. at 1123.

[16] In *Huber*, the parties executed a written land contract that required monthly payments, including a balloon payment at the end of the contract term. The buyer could not make the balloon payment at the end of the term and asked the seller to extend the payment deadline. The parties, subsequently, reached an oral agreement wherein they extended the payment deadline; however, a dispute arose between the parties regarding the terms of the extension. The trial

court found that the buyer breached the land contract when the buyer failed to make the balloon payment when it was originally due.

[17] On appeal, we affirmed and held that the Statute of Frauds unambiguously "applie[d] to the parties' oral agreement to modify the written land contract and, therefore, the oral agreement [wa]s unenforceable because it was not reduced to writing." *Id*. at 1117-18. Also, we held:

> . . . neither party has met its heavy burden of removing the oral agreement from the Statute of Frauds based on the equitable doctrine of promissory estoppel. Finally, because the oral agreement is unenforceable, we agree with the trial court that the buyer breached the written land contract by failing to make the balloon payment when it was originally due.

*Id*. at 1118.

[18] Here, it is undisputed that the contracts were fully executed and unambiguous. Robert, Sandra, and Susan manifested their intentions that Robert would pay $84,000.00 to Sandra and Susan, respectively, for their remainder interests in the Farm; on or before December 31, 2013, the $84,000.00 purchase price was required to be "paid in full, the deed delivered, [ ] all conditions [in the contracts] complied with[,] and th[e] negotiation closed on or before December 31, 2013 . . . ." *See* Appellant's App. Vol. II pp. 28, 34. The contracts explicitly contemplated two exceptions that allowed additional time to: (1) "correct[ ]

defects in title"; or (2) to address "any interference by action or proceedings of a Court of competent jurisdiction." *Id*. Neither exception applies here.[6]

[19] Robert failed to timely obtain financing and tender payments to Sandra and Susan before December 31, 2013, and thereby, breached the contracts. *See* Black's Law Dictionary 7th ed. 182 (1999) (defining "breach of contract" as a "[v]iolation of a contractual obligation . . . by failing to perform one's own promise"). Most significantly, Robert's failure to memorialize, in a writing, the terms of the alleged modification rendered the alleged modification unenforceable pursuant to the Statute of Frauds.

[20] Our analysis does not end here. As the *Huber* panel held, even when oral agreements fall within the Statute of Frauds, they may still be enforced under the doctrine of promissory estoppel. 33 N.E.3d at 1123. Thus, we proceed to address Robert's arguments regarding the doctrine of promissory estoppel.

## II. Promissory Estoppel

[21] Robert argues that the trial court erred in failing to find that the doctrine of promissory estoppel removed the alleged modification of the contracts from application of the Statute of Frauds. Robert argues in his brief:

> First, the [Appellees] told [Robert] that he could complete the purchase[s] at a later date. The [Appellees] knew, or should have known, that [Robert] greatly wanted to purchase the family farm,

---

[6] The plain language of the contracts does not evince any intent by the parties to allow for a third exception extending Robert's time to perform his contractual obligations if Robert failed to secure financing.

and thus [Robert] would rely on the promise of the Plaintiffs. [Robert] then relied on the promise made by the [Appellees]. The promise was of a definite and substantial nature in that [Robert] would be able to purchase the [Appellees]' portion of the Bohnke Family Farm at a later date. And, injustice can be avoided only by enforcement of the promise.

Robert's Br. pp. 29-30 (citations omitted).

[22] In granting partial summary judgment for the Appellees, the trial court found, in part: "Robert's designated materials do not . . . establish [ ] an 'unjust and unconscionable injury and loss[.]'" Appellant's App. Vol. II p. 16. This is the crux of the issue before us.

[23] Oral promises that are not enforceable under the Statute of Frauds may nonetheless be enforced under the equitable doctrine of promissory estoppel. *Hrezo v. City of Lawrenceburg*, 934 N.E.2d 1221, 1230 (Ind. Ct. App. 2010).

> A party seeking to defeat the Statute of Frauds requirement based upon promissory estoppel must establish: (1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise.

*Hrezo v. City of Lawrenceburg*, 934 N.E.2d at 1231.

[24] We have previously stated that the fifth element creates a high hurdle for the party seeking to establish promissory estoppel. *Spring Hill Developers, Inc. v. Arthur*, 879 N.E.2d 1095, 1101 (Ind. Ct. App. 2008); *see Huber*, 33 N.E.3d at

1124 ("In order to establish an estoppel to remove the case from the operation of the Statute of Frauds, the party must show that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights that the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss."). With respect to the fifth element, our Supreme Court has explained:

> In other words, neither the benefit of the bargain itself, nor mere inconvenience, incidental expenses, etc. short of a reliance injury so substantial and independent as to constitute an unjust and unconscionable injury and loss are sufficient to remove the claim from the operation of the Statute of Frauds.

*Spring Hill Developers, Inc.,* 879 N.E.2d at 1101-1102 (citations omitted), emphasis added.

[25] In *Classic Cheesecake Company, Inc. v. JPMorgan Chase Bank, N.A.*, 546 F.3d 839 (7th Cir. 2008), the Seventh Circuit engaged in an instructive analysis of the meaning of "unjust and unconscionable injury and loss" within in the context of Indiana's jurisprudence.[7] Judge Posner reasoned that "the whole weight of the doctrine of 'unjust and unconscionable injury and loss' falls on the gravity"

---

[7] *Classic Cheesecake* involved, inter alia, supplemental claims that: (1) were based on Indiana law; (2) "require[d] [the Seventh Circuit] to interpret a gloss that the Indiana courts have placed on [Indiana's] statute of frauds"; and (3) prompted the Seventh Circuit to analyze what constitutes "unjust and unconscionable injury and loss" under Indiana law. 546 F.3d at 840.

and the duration of the injury. *Classic Cheesecake,* 546 F.3d at 845. As to the duration of the injury, Posner opined:

> [t]he more protracted the period during which reliance costs are being incurred, the stronger the inference that the oral promise was as the plaintiff represents it to be; for had there been no promise the plaintiff's conduct—his immense reliance cost relative to his resources—would have been incomprehensible.

*Id.* Judge Posner further reasoned that:

> a party that wants to get around the statute of frauds [is required] to prove an enhanced promissory estoppel, and the enhancement consists of proving a kind or amount of reliance unlikely to have been incurred had the plaintiff not had a good-faith belief that he had been promised remuneration.

*Id.* We agree.

[26] Robert's promissory estoppel claim fails to clear the high hurdle of establishing "unjust and unconscionable" injury and loss. First, Robert's designated materials include meager reference to the duration of his alleged injury. In Count II of his counterclaim, Robert states that "for many years, [he] had leased the real estate central to this dispute for farming." Appellant's App. Vol. II p. 20; *see* Robert's Br. p. 35 ("For over six (6) years[,] [Robert] has sought to purchase the entirety of the Bohnke Family Farm."). Although six years is not an insignificant length of time, the usefulness of this information for purposes of Robert's promissory estoppel claim is undermined by the fact that Robert

farmed the land for a profit during the six-year duration; we would be hard-pressed to consider Robert's lease to constitute injury and loss.

[27] Next, as to the gravity of Robert's alleged injury, Robert summarizes his "unjust and unconscionable injury and loss" argument as follows in his brief:

> . . . [W]e are dealing with a family farm. It should go without saying that one simply does not replace the family farm with another chunk of real estate. [Robert] being promised to have the opportunity to purchase his family farm is no mere inconvenience. Rather, the injury is definite and permanent.

Robert's Br. p. 33. As Judge Posner wrote in *Classic Cheesecake*: ". . .[T]he reliance is more easily imagined as based on hope than on a promise"; and "[i]n the end, this case turns out to be a routine promissory estoppel case, and that is not enough in Indiana to defeat a defense of [S]tatute of [F]rauds." 546 F.3d at 846-47. Such is precisely the case here. We acknowledge, and are sympathetic to, Robert's investment of time, money, and emotion in his failed effort to acquire the Farm; however, Robert's designated evidence does not give rise to an "unjust and unconscionable injury and loss" of the gravity and duration contemplated by Indiana jurisprudence. *See id.*

[28] For the foregoing reasons, we find that the doctrine of promissory estoppel does not operate here to remove Susan's and Sandra's alleged promise from the Statute of Frauds.[8] The trial court did not err in granting partial summary

---

[8] As noted above, Susan denies making such a promise in her designated affidavit.

judgment in favor of the Appellees regarding Counts II and III of Robert's counterclaim.[9]

## Conclusion

The trial court did not err in granting partial summary judgment in favor of the Appellees. We affirm.

Affirmed.

Najam, J., and Vaidik, J., concur.

---

[9] We do not reach Robert's argument that waiver operated to remove the contracts from the Statute of Frauds. "Waiver is an intentional abandonment or relinquishment of a known right." *Waxman Industries, Inc. v. Trustco Development Co.*, 455 N.E.2d 376, 378 (Ind. Ct. App. 1983). "With reference to a breach of contract, it includes giving up the right to treat the contract as breached by the other party." *Id*. Robert's designated materials do not identify a right that Susan and Sandra intentionally abandoned or relinquished.